JOHN L. GRANDIN ET AL., APPELLANTS, v. FIRST NATIONAL BANK OF CHICAGO ET AL., APPELLEES.

FILED JANUARY 21, 1904. NO. 12,161.

1. **Attachment:** FRAUDULENT CONVEYANCE: ACTION. A plaintiff who has obtained an attachment upon specific real estate in this state, and recovered judgment thereon, may maintain an action in equity to set aside a fraudulent conveyance of the real estate by the judgment defendant, without the issuing and return of a general execution upon such judgment.

2. ———: FOREIGN ASSETS: JURISDICTION. In an action in equity to set aside a fraudulent conveyance of real estate in this state, and enable the plaintiff to enforce his attachment and judgment thereon against the land, amendments to the petition, alleging that the judgment defendant had also fraudulently transferred to the same grantee all his property situated beyond the jurisdiction of the court, but not describing any of the property so transferred or otherwise identifying it, will not give the court jurisdiction to subject property and assets outside of this state to the payment of the judgment, no general execution upon such judgment having been issued and returned unsatisfied.

3. ———: DISCHARGE IN BANKRUPTCY. After plaintiff in attachment has recovered judgment, and an order for the sale of the attached real estate, and has begun an action in equity to set aside a fraudulent conveyance of the real estate, the discharge in bankruptcy of the judgment defendant will not defeat such action.

4. **Action:** ABANDONMENT: DEFENSE. If such action to set aside a fraudulent conveyance is pending for several years, it is not a defense that the holder of the legal title has made valuable improvements thereon, while the action was pending, being led by the delay in bringing the action to trial to suppose that plaintiff's claim would be abandoned.

5. **Appeal:** TRIAL DE NOVO. Upon an appeal in equity this court will try the the issue *de novo*, and will not be influenced in its decision by the findings of the trial court based upon depositions or other written evidence. The conclusions of the trial court, derived from the consideration of the evidence of witnesses examined in the presence of the court, will not be regarded unless, upon the whole record, in view of the position of the trial court in weighing such evidence, they appear to be right. *Faulkner v. Simms*, 68 Neb. 295.

6. **Evidence.** Evidence in this case found to support the general finding of the trial court.

APPEAL from the district court for Douglas county: CHARLES T. DICKINSON, JUDGE. *Affirmed.*

*Hall & McCulloch* and *Geo. L. Loomis,* for appellants.

*William V. Allen* and *Bartlett, Dundy & Martin, contra.*

SEDGWICK, J.

In the year 1891, Spooner R. Howell was engaged as a sole trader in the lumber business in Chicago, under the name of S. R. Howell & Company. He was also engaged in the same business with one Herbert N. Jewett in Atchison, Kansas, under the name of Howell, Jewett & Company, and in Omaha, Nebraska, under the name of the Howell Lumber Company.

In July, 1891, Mr. Howell, being largely indebted to the First National Bank of Chicago, transferred his property to that bank, including a valuable piece of real estate in Omaha. In payment for this real estate the bank surrendered to Mr. Howell his promissory notes, which the bank held, amounting to $150,000.

In May, 1891, the firm of Howell, Jewett & Company gave certain drafts to these plaintiffs, amounting to something over $12,000. The plaintiffs began an action upon these drafts and procured the Omaha real estate to be attached. Judgment was obtained in that action. This action was brought to set aside the conveyance of the real estate from Mr. Howell (through an intermediary) to the

bank, and enable the plaintiffs to sell the land under their attachment lien in satisfaction of their judgment.

These interveners, the First National Bank of Punxsutawney, Pennsylvania, the Lincoln National Bank of Lincoln, Illinois, and the Commercial National Bank of Fremont, Nebraska, having claims against the Howell Lumber Company, and having procured attachments upon said real estate in actions on their respective claims and having obtained judgments thereon, intervened herein to obtain satisfaction of their several judgments out of the proceeds of the real estate. In May, 1900, the plaintiffs and the interveners, with leave of court, filed amended petitions herein.

The original petitions were disregarded and are not included in the transcript. In their amended petition the plaintiffs, in addition to the facts relied upon to subject the Omaha real estate to the lien of their attachment and the satisfaction of their judgment, made general allegations that Mr. Howell conveyed to the defendant bank "all his property of whatever kind or description, and all of the property of the Howell Lumber Company, Howell, Jewett & Company and Herbert N. Jewett, all aggregating an amount of $1,600,000, and that the "various conveyances made by said Spooner R. Howell to the First National Bank of Chicago, and particularly the conveyance made by Spooner R. Howell of the land above named, were made with the intention to hinder and delay these plaintiffs," etc, and prayed that the conveyance of the Omaha real estate to the bank be held as fraudulent and void as against the plaintiffs, and be set aside and held of no effect as against the judgment and attachment of these plaintiffs. The prayer also contained the following: "That the said First National Bank be held to account for the various properties received by it, and that it be compelled to show all of the property received by it from said Spooner R. Howell as aforesaid set out, and that it be held that such transactions were fraudulent and void as against the creditors of Spooner R. Howell, the Howell

Lumber Company, Howell, Jewett & Company, Herbert N. Jewett and George W. Howell, and that the money derived from the property so received by the said First National Bank be applied on the debt due from said Howell to these plaintiffs," with a general prayer for equitable relief. The various petitions for intervention contained substantially the same allegations and the same prayer.

The answer of the defendant bank contained specific denials of these allegations and alleged pertinent facts, showing the defendant to be the owner of the Omaha land by purchase from Mr. Howell in good faith, for full value, in notes of Mr. Howell held by the bank. This answer also objected to the jurisdiction of the court over all transactions between the defendant bank and Mr. Howell, other than that of the conveyance of the Omaha real estate. Upon these allegations, and the evidence, the plaintiffs and interveners insist that the trial court had jurisdiction of all of the transactions between Mr. Howell and the defendant bank, although made in another state and not relating to any property in Nebraska; and insist that their amended petition should be treated as a general creditors' bill, to subject to the payment of their claims all money and all property that Mr. Howell transferred to the bank in his settlement with the bank.

1. It seems to us that it is unnecessary to determine whether the bill might have been so framed as to have allowed of such an investigation and order on the part of the court. It seems clear that the general allegations of the bill, without specifying any property so transferred by Mr. Howell, are not sufficient to justify such action on the part of the court. The most that can be claimed for these allegations is that they lay sufficient foundation for such evidence of other transactions as may throw light upon the good faith of the transfer of the Omaha real estate.

2. The defendant bank insists that this action can not be maintained to subject the attached real estate to the lien of the attachment and to the satisfaction of their judg-

ment obtained thereon, because no execution had been issued on such judgment before the commencement of the proceedings. This contention is unfounded. The reverse has frequently been held by this court. *Kennard, Daniel & Co. v. Hollenbeck,* 17 Neb. 362; *Keene v. Sallenbach,* 15 Neb. 200; *First Nat. Bank v. Hollerin,* 31 Neb. 558; *Gillespie v. Cooper,* 36 Neb. 775.

3. It appears that before the trial of this case in the court below, the defendants Howell and Jewett were discharged in bankruptcy, and the defendant bank insists that this fact is a defense to the bank in this action. This contention can not be sustained. The discharge in bankruptcy could not have the effect to destroy the rights in this land, which had accrued to the plaintiffs and interveners by virtue of their attachments and judgments long before the proceedings in bankruptcy were begun.

4. It appears that neither party urged this action for trial for many years after it was begun, and, in the meantime, the judgments upon which the claims of the plaintiffs and interveners are founded became dormant, and were revived under the statute. The defendant bank appears to urge this circumstance as a defense in this action, insisting that the plaintiffs and interveners, by this delay, led the bank to suppose that they did not intend to try the case upon its merits, and that, in the meantime, the bank, relying upon its title in the attached land, made large improvements thereon at great expense, and urging other similar circumstances as affecting the right of the plaintiffs and interveners to recover in this action. Such contentions can hardly be supposed to be serious. It was the right of either party to urge the case to an early disposition, and, in the meantime, all parties interested in the land must take notice of the pendency of the action and of the claims of the various parties in the land as shown by their pleadings.

5. The trial court determined the issues in favor of the defendant bank and the plaintiffs and interveners have brought the case here upon appeal. The question in this

case is as to the validity and good faith of the conveyance of the Omaha real estate by Mr. Howell, through an intermediary, one of the officers of the bank, to the defendant bank; and we have found this a most difficult and perplexing question.  Notwithstanding the findings of the trial court, it is the duty of this court upon appeal to investigate the merits of the controversy as presented by the pleadings and evidence, and to render such decree as ought to be rendered in the case.  The duty of this court in this regard is set forth fully in the case of *Faulkner v. Simms*, 68 Neb. 295.  We think that the opinion in that case, in view of the action of the legislature of 1903 (sec. 681a of the code), and the former adjudications of this court, correctly declares the duty of this court upon such appeals.

The evidence shows that Mr. Howell had formed a partnership with Mr. Jewett to carry on the lumber business at Omaha.  The name of the partnership was the Howell Lumber Company.  The transaction of the purchase of this land was carried on in the name of the Howell Lumber Company.  The check that paid for it appears to have been in the partnership name.  It was carried on the books of the company as partnership property, but the title was taken in the name of Mr. Howell alone.  Mr. Jewett had very little, if any, real financial interest in the partnership business.  Money loaned by the defendant bank to Mr. Howell was used by him indiscriminately in the different branches of the lumber business in which he was the principal owner.  The trial court found that all parties interested knew that this land appeared upon the records and was held out to the public to be the property of Mr. Howell; that the defendant bank supposed, and was justified in supposing, that this land was a part of the assets of Mr. Howell upon which his creditors might rely as available for their claims; and concluded that, under such circumstances, Mr. Howell might use it to pay his personal creditors.  We have been referred to no authority for holding a contrary doctrine.

It is not disputed that this land had been deeded to Mr. Howell, and that the title was in him, as shown by the records of Douglas county; that on the 13th day of July, 1891, Mr. Howell by a sufficient deed of conveyance conveyed this land to one Lawrence; and that the consideration named in the deed was $150,000. Lawrence was then an officer of the bank, took the deed for the bank and, afterwards, duly conveyed the land to the bank; nor is it disputed that, at that time, Mr. Howell was indebted to the bank in a sum largely in excess of $150,000; that at least $150,000 of this indebtedness was covered by promissory notes executed by Mr. Howell to the bank; and that, in consideration of the conveyance in question, these promissory notes to the amount of $150,000 were surrendered by the bank to Mr. Howell. It is contended by the plaintiffs and interveners that, after Mr. Howell and the several companies in which he was interested had become insolvent, Mr. Howell, with the advice and assistance of certain counsel in Chicago, determined to reduce his assets as far as possible to cash, in order to defraud his creditors, and, for this purpose, borrowed additional money from the defendant bank and gave his notes therefor; and, while he personally obtained the benefit of this money, he proposed to make the bank good for advancing it to him, by turning over all of his assets, including this Omaha land, to the bank before his other creditors should be able to attach the property or otherwise realize their claims therefrom; and that the bank, with the knowledge of this purpose and intention on the part of Howell, or, at least, with a knowledge of sufficient facts to amount in law to notice of such a purpose and intention, advanced the money to Mr. Howell, and took the promissory notes in question therefor; and that, afterwards, when it became apparent that Mr. Howell could no longer continue his business, the bank took transfers of all of his property, which it is claimed was much more than sufficient to pay all of the claims of the bank; and that the conveyance of this land to the bank by Mr. Howell was in pursuance of

the plan so formed by Mr. Howell. On the other hand, the bank insists that it had no specific knowledge of Mr. Howell's indebtedness outside of his indebtedness to the bank, and had no knowledge of any intention of Mr. Howell to defraud his creditors, or of any facts which would lead a reasonable man to suppose that Mr. Howell had such intention; and that, pursuant to the course of business which had existed through many years between Mr. Howell and the bank, the bank advanced money from time to time to Mr. Howell; and that, at the time of the conveyance of the land in question, Mr. Howell was indebted to the bank in more than the sum of $700,000; and that the bank, in good faith, took the conveyance in question for the sum of $150,000 and canceled that much of the indebtedness of Mr. Howell to the bank. As long as Mr. Howell continued the business, and while the business was a "going concern," the bank might lawfully advance him money to be used in the business, or to settle with his creditors, and Mr. Howell's agreement to transfer his assets to secure money so advanced would not be unlawful. If Mr. Howell obtained this money with the purpose and intention of keeping it from his creditors, and so prevent them from securing their claims, such intention would be fraudulent on his part. If this fraudulent intention was known to the bank, any securities that the bank might obtain pursuant to such transactions would undoubtedly be subject to attachment upon the claims of Mr. Howell's creditors. Did the bank know of this fraudulent purpose of Mr. Howell? Was the bank possessed of such facts as would have suggested to a prudent man that the action of the bank in advancing this money was assisting Mr. Howell in carrying out a fraudulent plan?

Upon these issues a mass of testimony was taken, embraced in a bill of exceptions in three volumes and covering over 1,000 pages of closely typewritten matter. A part of this evidence is in depositions, and other written matter, and a considerable portion of it is the evidence of witnesses orally examined before the trial court. In studying this

mass of testimony, we have been strongly convinced of the soundness of the opinion in *Faulkner v. Simms, supra.* We must, upon this evidence, try the question of fraud in this transaction *de novo.* In considering the depositions and other written evidence that appears before this court in the same form and condition that it appeared before the trial court, we are not aided by the conclusions of the trial court. We have equal, if not better, opportunity to examine this evidence with care and deliberation than had the trial court. In reading the written evidence of the witnesses who were examined in the presence of the court, and in considering and weighing their conflicting and inconsistent statements, and expressions that are sometimes doubtful as to the real meaning of the witness, we are impressed with the importance of hearing the testimony of the various witnesses and of observing their demeanor upon the stand, their apparent candor and fairness, or their want thereof, and many other circumstances that might be of assistance in determining the truth of the matter. The trial court had these advantages. We are not bound by the conclusions of the trial court, even where it is manifest that they are derived from this evidence, the weight and probative force of which might depend largely upon the apparent candor of the witness, and the circumstances and surroundings under which he is testifying, unless, from the whole record, it impresses us that, in view of all of these circumstances, the conclusion of the trial court is more probable than the converse would be. The trial court made a general finding for the defendant bank and also found that when Mr. Howell made the conveyance to the bank he was indebted to the bank over $600,000; that he was then the owner in fee simple of the real estate described in the plaintiffs' petition, and had good right to sell and convey the same; that the conveyance to the bank was made by him in good faith, without any intention to delay or defraud the creditors of Mr. Howell, Howell, Jewett & Company, the Howell Lumber Company, Herbert N. Jewett, George W. Howell, or any other person or per-

sons or corporation; that the conveyance was taken by the bank in consideration of $150,000, being a part of the indebtedness of Mr. Howell to the bank, for "that much money loaned and advanced by said defendant bank to said Howell"; that this indebtedness was covered by promissory notes of said Howell to the bank and was a part of all of the indebtedness of Howell to the bank. We can not wholly or partially give an analysis of the mass of testimony from which these conclusions are derived. The evidence, to our minds, shows clearly that Mr. Howell and his advisers expected and intended to defraud Mr. Howell's creditors; that he borrowed money from the bank while he knew himself to be insolvent, and did not apply, and never intended to apply, this money in payment of his just debts; and that the notes given by Mr. Howell for this identical money, that he so procured with the intention to defraud his creditors, were soon afterwards returned to Mr. Howell as the consideration for this land. The circumstances of this transaction are to be derived largely from the conflicting testimony of the various witnesses orally examined in the presence of the court. If the evidence of these witnesses is believed, and the meaning to be derived from their language upon the witness stand is correctly shown in the transcript of their reported testimony, the plaintiff and interveners have not furnished sufficient evidence to establish guilty knowledge on the part of the bank. The burden is upon them to show that the officers of the bank participated in the fraud of Mr. Howell. The evidence of the president of the bank is contained in depositions, and it is insisted that from this evidence it should be found that the bank had knowledge of the purposes and intention of Mr. Howell or, at least, had knowledge of such facts as ought to have restrained the bank from advancing him money upon the security of the property afterwards by him transferred to the bank. But this contention is not well founded. The evidence of this witness is consistent with honor and fair dealing upon the part of the bank. The evidence of other witnesses, notably that of Mr. Howell

and Mr. Jewett, has given us much trouble, in the light of the transactions of the bank as detailed in the deposition of its president. The difficulty arises, not from serious doubts of the honorable intentions of the officers of the defendant bank, but in determining the weight of the evidence tending to establish facts which, in law, would amount to notice to the bank of the fraudulent intent of Mr. Howell.

Upon the whole record we are inclined to the view that the general finding of the trial court in favor of the defendant bank is right. This requires an affirmance of the judgment.

AFFIRMED.