MARTHA E. ALLEN, APPELLANT, V. ARTHUR N. ALLEN, APPELLEE.

FILED JULY 17, 1931. NO. 27826.

*Raymond & Fitzgerald,* for appellant.

*Morrow & Morrow* and *Glebe & Elliott, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action for divorce and alimony. The petition, in usual form, alleges marriage of the parties "at Denver, Colorado, September 28, 1923;" charges the defendant with cruelty and nonsupport; alleges that he is the owner of property of approximately $10,000 in value; and prays for a divorce and alimony.

In his answer and cross-petition, defendant denies that "plaintiff and defendant were married at Denver, Colorado, September 28, 1923," or any other time; alleges that plaintiff and defendant are not married, but "that they agreed when they started living together not to become man and wife, and no marriage was ever contracted by said parties.". He further denies the acts of cruelty alleged by plaintiff, and alleges on his part cruel treatment of defendant by plaintiff; also that plaintiff was on the 29th day of September, 1914, married to one Charles Henry Cameron; and on information and belief defendant alleges that no divorce has been obtained by either party, and that plaintiff is now the wife of said Cameron.

By an "Amended Reply and Answer" the plaintiff joined issue as to the allegations of new matter contained in defendant's answer and cross-petition.

There was a trial to the court and a finding and judgment in favor of defendant. The district court found specially that the defendant and plaintiff were never legally married, and that the purported common-law marriage was void under section 1492, Comp. St. 1922, as amended by section 2, ch. 40, Laws 1923; and thereupon entered a further order making disposition of certain property rights of the parties, but made no allowance as alimony.

Plaintiff appeals, and defendant on his part prosecutes a cross-appeal.

It appears from the record that plaintiff was married to one Charles Henry Cameron on September 29, 1914; that Cameron deserted plaintiff and plaintiff's minor children in the holiday season of 1916 and 1917. Thereafter, according to plaintiff, he was never heard from, and plaintiff believed him dead at the time of her present marriage. Plaintiff's evidence (disputed by the evidence of defendant) also tends to establish that on September 28, 1923, a marriage to the defendant was solemnized by one Reverend Wilson, an Adventist minister, at Denver, Colorado, where both plaintiff and defendant were then engaged in business, and were *bona fide* residents; that all preliminary arrangements for the marriage ceremony, including the

selection of the minister, were made by defendant, and that plaintiff entered into this ceremony in good faith, received a certificate of marriage from the officiating clergyman, and thereafter lived in the *bona fide* belief that she was legally married to the defendant.

There is no dispute in the evidence that after the date of the alleged marriage ceremony, so far as the world was concerned, the parties held each other out as husband and wife. They lived and cohabited together as man and wife, and were so recognized and received for the six years next ensuing in the various communities where they afterwards resided. It also appears that plaintiff was called upon to, and did, execute real estate mortgages as the wife of the defendant. It may be said that in every way, so far as the public were concerned, these people lived and enacted the part of husband and wife duly married.

The first question presented is: Was the marriage ceremony actually performed? Defendant strenuously denies this under oath, and plaintiff in like manner affirms. There is no other oral evidence of eyewitnesses presented. The trial court evidently found against the plaintiff on this issue.

The defendant contends: "Where a trial is had to the court, and the evidence on a particular point is in irreconcilable conflict, the court will, in its determination of that question, consider the findings of the trial court, although it is required by statute to try the case on the record *de novo." Greusel v. Payne,* 107 Neb. 84. See *McGill v. McGill,* 114 Neb. 636; *In re Estate of Waller,* 116 Neb. 352; *Jones v. Dooley,* 107 Neb. 162; *Corn Exchange Nat. Bank v. Jansen,* 70 Neb. 579.

It will be noted that the controlling evidence in the cases upon which the defendant relies to sustain his contention was almost wholly the testimony of witnesses in open court in which there was irreconcilable conflict. Indeed, the above rule, by its very terms, appears to be limited to this particular class of cases.

In the present case it is true that, while the evidence of the defendant and the plaintiff on the point under consid-

eration is at variance, six years of their joint lives, following this important date, furnishes circumstantial evidence on the same question disclosing controlling facts and circumstances which are in no manner denied or questioned. This situation brings the instant case fairly within the terms of the statute as interpreted by the following decisions: "The supreme court is not bound by the findings and judgment of the trial court in an equity case, but it is the duty of this court to try the case *de novo,* and to reach an independent conclusion as to the weight, credibility and effect of evidence, and to render judgment accordingly. *Colby v. Foxworthy,* 80 Neb. 244. And the conclusions of the trial court, derived from the consideration of the evidence of witnesses in the presence of the court, will not be regarded, unless upon the whole record, in view of the position of the trial court in weighing such evidence, they appear to be right. *Grandin v. First Nat. Bank,* 70 Neb. 730." *Nelson v. City of Florence,* 94 Neb. 848.

Applying the rule thus announced to the evidence in the record, in the light of the presumption which ordinarily applies to questions of this kind, we are impressed with the view that the testimony before us, supported by the uncontradicted facts and circumstances, is such as to fully support the conclusion that the ceremony of marriage was had between the plaintiff and the defendant substantially as testified to by the plaintiff. In fact the admitted circumstances surrounding the lives of these two parties from the time of the performance of this ceremony to the date of the institution of these proceedings are such that, if the mouths of both were sealed in death, these facts would fully sustain any civil action based upon the proposition of a legal marriage having taken place between the parties to this lawsuit. Plaintiff is certainly entitled to the benefit of this circumstantial evidence in a determination of her rights in this action, and it, together with her evidence, plainly establish her contention by a preponderance of the evidence.

But this does not dispose of the case. It must be con-

ceded that, if it be established that the former husband, Charles Henry Cameron, was alive and undivorced at the date of this marriage ceremony, the incapacity of plaintiff to make it would be established and its legal effect nullified.

In view of the fact that we have before us a Colorado contract, the discussion of a similar question by the supreme court of that state in the case of *Pittinger v. Pittinger*, 28 Colo. 308, is of peculiar interest. Gabbert, J., in delivering the opinion of the court in that case, says in part: "No man is presumed to do an unlawful act. When a marriage has been shown, the law raises a strong presumption in favor of its legality. By some of the authorities this presumption is said to be one of the strongest known to the law. Its strength increases with the lapse of time. This presumption arises because the law presumes morality and not immorality and that every intendment is in favor of matrimony. *Lampkin v. Insurance Co.*, 11 Colo. App. 249; 2 Nelson, Divorce and Separation, sec. 580; *Boulden v. McIntire*, 21 N. E. 445; *In re Rash's Estate*, 53 Pac. 312; *Teter v. Teter*, 101 Ind. 129; *Johnson v. Johnson*, 114 Ill. 611." See *McKibbin v. McKibbin*, 139 Cal. 448.

Indeed, where the celebration of a marriage is proved, the capacity of the parties thereto is presumed. *United States v. De Amador*, 6 N. M. 173; *Ferrell v. State*, 45 Fla. 26.

So, also, "Where a marriage has been shown, whether regular or irregular, the law raises a strong presumption of its legality, and the party who asserts its illegality must assume the burden of that issue. The law is so positive in requiring a party who attacks a marriage to take the burden of proving its invalidity that such requirement is enforced even when it requires the proof of a negative. This is based on the rule that, where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative. The person having the burden of proof is required to make plain, against the constant pressure of the presumption of legality, the

truth of law and fact that the marriage was not legal. The evidence to repel that presumption must be strong, distinct, and satisfactory. Thus, if it is claimed that, at the time of the marriage, one of the parties had a living spouse, it is incumbent upon him who attacks the marriage upon this ground to overcome the presumption of its validity, by establishing the former marriage, in all respects in conformity to law, and that the former spouse was living at the time that the second marriage was entered into, *and undivorced.*" 18 R. C. L. 427, sec. 56. See *McKibbin v. McKibbin,* 139 Cal. 448; *Winter v. Dibble,* 251 Ill. 200; *Estes v. Merrill,* 121 Ark. 361; *Kinney v. Tri-State Telephone Co.,* 201 S. W. (Tex. Civ. App.) 1180.

So, too, the rule is established by the weight of authority that "The general presumption is that the life of a person continues for seven years after he is last heard from, and that his death is presumed after the lapse of that time, but where the presumption of the validity of a marriage, arising from the performance of a ceremony, conflicts with the presumption of the continued life of a former spouse of one of the parties, if neither is aided by proof of facts or circumstances corroborating it, the presumption of the validity of the second marriage will prevail over the presumption of the continuance of the life of the former spouse although the full seven years has not elapsed. * * * While the law does not raise any presumption as to the time when, within the seven years, the death in fact occurred, still if the full period has elapsed at the time the question is raised it may well be presumed, in the absence of any evidence to the contrary, to have taken place before the second marriage." 18 R. C. L. 417, sec. 42.

"Where it appears that the parties to a prior marriage were living at the time of a subsequent marriage of one of the parties to a third person, it will be presumed that the disability of the prior marriage has been removed by a divorce before the time of the second marriage in the absence of any contervailing evidence or corroborating circumstances." 18 R. C. L. 418, sec. 43. Also, *Greenwood*

*v. Frick,* 233 Fed. 629; *Goset v. Goset,* 112 Ark. 47; *In re Pusey,* 173 Cal. 141; *Smith v. Fuller,* 108 N. W. (Ia.) 765; *In re McCausland's Estate,* 213 Pa. St. 189; *Wagoner v. Wagoner,* 128 Mich. 635; *Vreeland v. Vreeland,* 78 N. J. Eq. 256.

In the light of all the evidence in the record, it is plain that the defendant wholly failed to meet the burden that the law placed upon him in the establishment of the illegality of the marriage contract. Nor does the fact that no record now exists of such marriage in Colorado militate against the plaintiff. The accessories to the ceremony were all provided by the defendant; by implication at least he represented that they were legal, proper, and in accord with the law of the state in which the ceremony took place. We are committed to the rule that, where one party to the marriage relation "induces the other to believe, in good faith, that the contract is made and is binding, the law will hold the party taking such advantage to the full terms of the agreement as in other cases." *Coad v. Coad,* 87 Neb. 290.

Nor do we find that, under the facts established by the evidence, this marriage ceremony and contract in any manner contravened the provisions of section 1492, Comp. St. 1922, as amended by section 2, ch. 40, Laws 1923. The provisions of the section referred to are certainly limited by their terms to "marriages solemnized in the state of Nebraska." This is a Colorado marriage. "All marriages contracted without the state, which would be valid by the laws of the country in which the same were contracted, shall be valid in all courts and places in this state." Comp. St. 1929, sec. 42-117. See *Gibson v. Gibson,* 24 Neb. 394; *Bailey v. State,* 36 Neb. 808; *Hills v. State,* 61 Neb. 589; *State v. Hand,* 87 Neb. 189; *Staley v. State,* 89 Neb. 701.

A careful examination of the record as an entirety supports the conclusion that the allegations of plaintiff's petition are adequately supported by the evidence; that the charges of cruelty and nonsupport therein contained are sustained; and that the plaintiff is entitled to a decree of divorce, and that the trial court erred in its finding and judgment in denial thereof.

It appears, however, that the question of alimony and allowances to which the plaintiff is entitled has not been passed upon by the trial court. The findings and judgment of the district court are, therefore, set aside and reversed, and the cause is remanded, with directions to enter a decree of divorce for the plaintiff as prayed, and to proceed to the determination of the amount of alimony and allowances to which the plaintiff may be entitled, including attorney fees, with permission, upon application of the parties, to allow the introduction of additional evidence as to properties involved and the values thereof.

REVERSED.

DAY, J., Dissents.