VIRGINIA LEE MILLER, NOW VIRGINIA LEE MUTZ, APPELLEE,
v. AL W. MILLER, JR., APPELLANT.

71 N. W. 2d 478

Filed July 8, 1955. No. 33775.

*Stewart & Stewart,* for appellant.

*Jacob H. Jaffe* and *Sterling F. Mutz,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

BOSLAUGH, J.

This litigation concerns the validity of an allowance adjudged to be paid by appellant to appellee as compensation of her counsel for their services in securing satisfaction of the unpaid and past due part of an alimony award required to be paid to her by appellant.

A decree was rendered January 11, 1944, by the district court for Lancaster County granting appellee an absolute divorce from appellant and requiring him to pay appellee the sum of $75 each month thereafter as alimony. The requirements of the decree were satisfied by appellant to September 2, 1944, an additional $509.64 was applied on it December 24, 1946, and no other payment was made on the decree until October 5, 1953. Appellee filed a motion to revive the judgment for alimony August 1, 1953. A conditional order was made requiring appellant to show cause against the revivor of the judgment not later than September 14, 1953, and notice thereof was duly given to him. He made no contest. The application for revivor was heard September 15, 1953, and the court found that the statements made therein were true; that the judgment should be revived; and that there was due and owing thereon, including the installment which matured September 1, 1953, $9,729.51.

A final order of revivor was rendered and execution on the judgment was awarded. Appellant paid to the clerk of the district court October 5, 1953, the amount of the judgment, the accrued interest, and the balance of court costs in the total sum of $9,771.17.

A notice of lien was that date filed with the clerk of the court by Jaffe and Green, attorneys of 228 North La-Salle Street, Chicago, Illinois. It recited that they had been employed by appellee to collect the judgment for an agreed compensation of not less than 25 percent of any amount recovered before "actual trial" and 33⅓ percent of any amount recovered after suit commenced and trial thereof begun, and that they claimed a lien in accordance therewith. The lien claimed by Jaffe and Green was discharged November 25, 1953, as to the amount paid to the clerk of the court as above stated in satisfaction of the judgment except the sum of $2,400 and as to that amount the lien was continued. The clerk was authorized to pay the excess above $2,400 to appellee. The clerk retained $2,400 of the amount paid him on the judgment because of the claim of lien and allocated the balance of the amount to appellee on the date that the partial release of the lien was filed.

A motion was filed in the case December 8, 1953, by appellee for an order directing appellant to pay to her a reasonable amount of "attorneys' fees incurred by the plaintiff (appellee) in enforcing collection of the amounts due under and pursuant to the decree in this cause * * *." Objections to the allowance sought were made by appellant on the ground that neither the law, equity, nor the facts authorized an allowance of fees to compensate the attorneys for appellee to be paid by appellant for the services described in the motion of appellee. The district court granted the motion of appellee and adjudged that she should recover from appellant the sum of $1,500 "as attorney fees herein." This appeal contests the legality of that adjudication.

The factual matters relied upon by appellee were ex-

hibited by an affidavit of Jacob H. Jaffe of Chicago, an Illinois attorney with 43 years experience in the practice of law and a member of the firm of Jaffe and Green, and an affidavit of Sterling F. Mutz of Lincoln, a Nebraska attorney who had been engaged in law work for 42 years. The former, identified herein as affiant, asserted the following matters: He accepted employment May 19, 1953, by appellee to collaborate with Sterling F. Mutz, hereafter referred to as Mutz, in the collection of the alimony judgment in her favor against appellant. He was furnished by Mutz on May 23, 1953, a certified copy of the record of the judgment, information concerning the location, business, assets, income, and finances of appellant, was advised that Nebraska law permitted appellee to recover attorney's fees incident to the enforcement of the judgment, and that the Uniform Enforcement of Foreign Judgments Act was effective in Nebraska and might be relied on if Illinois had a similar act. Affiant investigated the law of Illinois on this subject and found that state had adopted a contrary view. He made inquiry if such a recovery could be had in the Nebraska court where the judgment was rendered and was advised by Mutz that it could. Affiant was concerned about the 5-year statute of limitations barring recovery of any installment of the judgment due more than 5 years before an action was commenced thereon in Illinois. He found that the law of that state was to that effect and he made inquiry as to the situation in that regard in Nebraska, and was told by Mutz that the Nebraska statute of limitations was not applicable to a judgment for alimony. Affiant then suggested that the judgment be revived in Nebraska and that the unpaid past due amount of it be ascertained and adjudicated in and by the revivor proceeding. The question as to whether the marriage of appellee after the decree of divorce adversely affected the judgment was considered and investigated, and it was decided that the proceedings

had on the application of appellant to modify the decree foreclosed this question.

Appellant was advised by affiant that he was employed to collect the judgment and he was referred to Harold W. Norman, a Chicago attorney, named herein as Norman, who represented the appellant, with whom affiant conferred. He advised Norman concerning the judgment, the amount claimed due thereon, and that suit would be brought on it unless some arrangement was made to satisfy it. Thereafter consideration was given to a possible proceeding in Nebraska or Illinois against appellant for contempt on account of his failure to pay appellee as the decree required with the result that it was believed that a suit in Illinois on the judgment after it was revived was more advisable. Affiant then contacted Norman and he requested reasonable time to communicate with Lincoln attorneys concerning the case, and to make a search and study of the case in the Nebraska court for any defect therein that would afford appellant a defense against enforcement of the judgment. Consent to a reasonable time was given. Mutz advised affiant June 23, 1953, that Norman and appellant were in Lincoln, had conferred with Stewart and Stewart, and had suggested to Mutz the possibility of a settlement of the judgment should be explored, and that Mutz had agreed thereto. He told affiant that he would have a discussion with appellee in reference thereto and that further conferences would be had in Chicago. Three days thereafter affiant said he talked with Norman and decided that a settlement was unlikely and that a suit should be prepared and commenced on the judgment in Chicago. Affiant questioned whether the Chicago court would have power to reduce or disturb any accrued payment and upon inquiry he learned from Mutz 2 days later that the Nebraska court had decided that this could not be done. Mutz sent affiant an outline of legal questions which might arise in a suit on the judgment in Illinois and this was pondered on by affiant.

Sometime after July 3, 1953, Norman objected to the claim of appellee for compound interest and affiant referred this to Mutz and was advised that only simple interest at 6 percent per annum could be legally demanded. Affiant July 23, 1953, suggested to Mutz possible additional problems which might arise in a suit on the revived judgment and advised that any suit brought should be in the United States District Court in Chicago. An application for revivor of the judgment was received by affiant July 31, 1953, and he secured service on appellant of the conditional order of revivor made by the district court in Nebraska. Affiant had two futile conferences with Norman prior to September 3, 1953. Information of the revivor of the judgment was received by affiant September 16, 1953, with instructions to bring suit thereon in Chicago unless settlement was made by appellant. Norman advised affiant September 24, 1953, that he had been instructed by appellant to take steps to have the judgment set aside and to resist any proceeding brought on it, but October 6, 1953, affiant was told by Norman that the amount of the judgment had been sent to Lincoln to satisfy it, and Mutz told affiant by letter received October 8, 1953, that the judgment had been paid to the clerk of the district court in Lincoln. Affiant expressed the opinion that $1,500 was a reasonable charge for the services he had rendered appellee.

The substance of the Mutz affidavit is: He was retained by his wife to enforce the alimony judgment against appellant. He had negotiations with Stewart and Stewart, Lincoln attorneys for appellant, in an effort to collect the amount owing appellee and concluded payment thereof would not be made unless action was brought on the judgment against appellant in Chicago. In May 1953 Mutz secured the assistance of Jaffe, and furnished him a copy of the judgment, necessary information to sufficiently advise him in the premises including the fact that an allowance of reasonable attorney's fees

could be secured against appellant under Nebraska law, and that the judgment for alimony was not subject to the statute of limitations of Nebraska. He furnished authorities to Jaffe to this effect May 29, 1953. Jaffe told Mutz that the 5-year statute of limitations of Illinois would apply to an action brought on the judgment in that state, and he suggested to Jaffe that this could be avoided by reviving the judgment in Nebraska and it would then be entitled to full faith and credit in Illinois. Mutz had a conference with Norman and Don Stewart June 22, 1953, concerning the proposed litigation against appellant and he promptly informed Jaffe of this. He wrote Mutz June 25, 1953, further concerning the statute of limitations and Mutz made and sent to Jaffe an outline of questions which might arise if a suit was commenced on the judgment in Illinois. Jaffe insisted the judgment should be revived in Nebraska, and Mutz prepared an application therefor, procured a conditional order of revivor, and sent a certified copy of it to Jaffe for service on appellant. He did not contest a revivor of the judgment and a final order was rendered including an adjudication of the amount due and unpaid on the judgment September 15, 1953. A copy of a letter of Norman to Jaffe was received by Mutz September 24, 1953, stating matters appellant intended to rely upon to oppose any action brought against him in Chicago. These were considered by Mutz and he decided they were foreclosed by litigation the parties had in the divorce case in Nebraska and could not be successfully urged by appellant. On September 25, 1953, Mutz sent his conclusions as to them to Jaffe. He advised Mutz of the futile negotiations had with Norman, and Mutz secured exemplified copies of the record of the judgment and the order of revivor, and sent them to Jaffe with instructions to bring suit on the judgment in Chicago against appellant if the judgment was not paid. Jaffe responded September 29, 1953, that he had concluded that suit should be brought in the Circuit Court

in Chicago and that a summary judgment could probably be secured therein. Mutz wrote Jaffe of his approval of the suggestion but October 6, 1953, Mutz was informed by Jaffe that the amount of the judgment had been sent by Norman to Lincoln for payment of it. Mutz learned October 7, 1953, that the judgment had been satisfied by payment to the clerk of the district court. Mutz stated that a reasonable charge for his services to appellee in connection with the enforcement of the judgment was $750.

The proof made by appellant was an affidavit of Harold W. Norman of Chicago, an Illinois attorney for 33 years, hereafter referred to as affiant, and an affidavit of Don W. Stewart of Lincoln, a Nebraska attorney for more than 38 years. The substance of these is the following: Affiant was first advised of the matter by a letter from appellant with which was enclosed a letter from Jaffe and Green to him. The office of affiant maintains complete and accurate records of all telephone conversations and personal conferences. These records do not show that he had any personal conference with Jacob H. Jaffe, hereafter named Jaffe, or any member of Jaffe and Green, and to the best of the knowledge and recollection of affiant there was no such conference concerning the judgment referred to herein. Affiant had telephone conferences with Jaffe June 26, June 30, July 13, and August 20, 1953, and at no other times. The conferences were each brief and none lasted more than 2 or 3 minutes. The only legal question discussed was the contention of appellant that the settlement papers in the divorce proceeding had been fraudulently changed to eliminate a provision originally embodied therein that alimony payments to appellee would terminate in the event that appellee remarried. The other conversations between affiant and Jaffe were all devoted to questions of the amount due and the possibility of a settlement of it. Affiant or his client or any one acting for him did not after May 27, 1953, refuse

to pay the judgment. Affiant and those associated with him were after that date engaged in good faith efforts to negotiate a settlement of the judgment. Affiant and Don W. Stewart June 22, 1953, discussed the possibility of a settlement with Mutz and thereafter until September 21, 1953, when affiant received a letter from Jaffe stating a deadline for a payment of the judgment he had every reason to believe, and he did believe from the conversations with Mutz and Jaffe that a settlement could be reached for an amount less than the face amount of the judgment with interest. Affiant wrote Jaffe September 21, 1953, on receipt of his letter: " 'I have your letter of September 21, 1953, and I am somewhat disappointed as I had believed from our telephone discussions and correspondence that you were going to submit a proposition for settlement.' " There was no occasion for any legal services on the part of counsel for appellee after May 27, 1953, other than with respect to the negotiation of a settlement of the amount to be paid on account of the judgment.

The affidavit of Don. W. Stewart, the Lincoln attorney for appellant, hereafter referred to as Stewart, states he had no conversation with anyone concerning the judgment of appellee for alimony from December 26, 1952, until May 29, 1953, when he received a letter from Norman which included a copy of a letter from Jaffe to appellant stating Jaffe had been requested by appellee to enforce payment of alimony under the decree. About June 17, 1953, Stewart was requested by the Chicago attorney of appellant to arrange with Mutz for a conference June 22, 1953, which he did. There was a conference that date of Mutz, Norman, appellant, and Stewart at which the possibility of the settlement of all liability of appellant to appellee was considered. Mutz said he desired to discuss the proposal with appellee, that he would do so, and advise Stewart of the result. About a week later Mutz told Stewart that he and appellee had considered the suggestions of set-

tlement and Mutz had written Jaffe and as soon as he had a reply he would inform Stewart the kind of a settlement appellee would accept. Stewart heard nothing further from Mutz, but August 8, 1953, he learned from Norman that appellant had been served with notice of a revivor proceeding and that the amount claimed to be due on the judgment included compound interest. Norman inquired of Stewart if compound interest was proper and he advised that only simple interest could be collected. The judgment was revived September 15, 1953, without contest, and the court in finding the amount due thereon disregarded compound interest and allowed only simple interest. After the revivor Mutz mentioned the matter of settlement and said he had written Jaffe, and when he replied Mutz would inform Stewart what appellee would do in reference thereto. Mutz also said an obstacle to settlement was the fact appellee thought she should have an allowance from appellant to compensate her attorneys. Norman wrote Stewart about October 2, 1953, that Jaffe had informed him that the judgment must be paid by October 5, 1953, or suit would be filed that date. Payment of it was made on that date by Stewart with a remittance from appellant. Stewart filed with the clerk the notice of attorneys' lien claimed by Jaffe and Green which was enclosed with the remittance. The negotiations of Stewart with Mutz concerned only settlement of past and future liability of appellant and whether compound interest was collectible.

Appellant argues that there was no proceeding in court incidental to procuring satisfaction of the alimony judgment and that there is neither statute nor uniform course of procedure which authorizes the allowance made to appellee. This contention may not be sustained. If a defendant in a divorce case fails to satisfy a judgment for alimony rendered therein in favor of the plaintiff according to its terms, and the plaintiff employs counsel to enforce it and this is accomplished

with or without court proceeding, the court in which the judgment was rendered has discretionary power by virtue of section 42-308, R. R. S. 1943, to require the defendant to pay to the plaintiff a reasonable sum as compensation for the services of her counsel in obtaining satisfaction of the judgment. The relevant part of section 42-308, R. R. S. 1943, provides: "In every suit brought * * * for a divorce * * * the court may, in its discretion, require the husband to pay any sum necessary to enable the wife to carry on or defend the suit during its pendency; and it may decree costs against either party * * *." In Lippincott v. Lippincott, 152 Neb. 374, 41 N. W. 2d 232, it is said: "* * * the trial court has discretionary power and authority in a divorce action to require the husband to pay any sum necessary to enable the wife to carry on or defend the suit during its pendency, and decree costs against either party. § 42-308, R. S. 1943. Actions for divorce are conducted in the same manner as other suits in courts of equity, and the trial court has authority to decree costs and enforce its decrees as in other cases. § 42-307, R. S. Supp., 1949. * * * The action at bar was * * * a proceeding in the original action during its pendency, to obtain an allowance of expenses and attorneys' fees as a judgment for costs, necessitated in order to enforce and make effective the provisions of the court's decree, which defendant had * * * refused to perform * * *. In that connection, the court retained jurisdiction of the divorce proceedings at all times, whether the decree so provided or not, to enforce its decree with regard to compliance with the award of alimony. * * * Contrary to defendant's contention, dissolution of the marital relations by the divorce decree did not terminate the authority of the court to allow such expenses and attorneys' fees." See, also, Miller v. Miller, 153 Neb. 890, 46 N. W. 2d 618; Nowka v. Nowka, 157 Neb. 57, 58 N. W. 2d 600. A divorce case is pending continuously and indefinitely until all matters involved

therein or incidental thereto are satisfied and terminated. §42-324, R. R. S. 1943; Lippincott v. Lippincott, *supra.*

The judgment was rendered January 11, 1944. The record does not show that an execution had been issued thereon. § 25-1515, R. R. S. 1943. Appellee commenced proceedings to revive it on August 1, 1953. A final order of revival was rendered September 15, 1953, and the court adjudged the amount due thereon as of September 1, 1953. § 25-1420, R. R. S. 1943. The reason for this was that appellant had become a permanent resident of and was engaged in business in Chicago and appellee contemplated that it would be necessary to obtain a judgment against him in that state. It is the law of Illinois that the 5-year statute of limitations is applicable to a suit brought in that state on a judgment of another state, and this would have prevented recovery of judgment in an action brought there for any installment of the alimony judgment that accrued more than 5 years before the commencement of the action. Britton v. Chamberlain, 234 Ill. 246, 84 N. E. 895; Truscon Steel Co. v. Biegler, 306 Ill. App. 180, 28 N. E. 2d 623. The proceeding for revival of the judgment was not the commencement of an action but a continuation of the suit in which the judgment was rendered. An order of revival is a mere continuation of the original action and continues the vitality of the original judgment with all of its incidents from the time of its rendition. Tierney v. Evans, 92 Neb. 330, 138 N. W. 140; McDonald v. Thomas County, 89 Neb. 494, 131 N. W. 1021; Bankers Life Ins. Co. v. Robbins, 59 Neb. 170, 80 N. W. 484; Eaton v. Hasty, 6 Neb. 419, 29 Am. R. 365. The remedies, proceedings, and processes available to enforce other judgments may be taken advantage of to compel satisfaction of an alimony judgment. The existing situation in the matter made it advisable for appellee to have a revival of the judgment and it was an appropriate incident to the effort

to enforce the judgment. §§ 42-319, 42-320, R. R. S. 1943; Lippincott v. Lippincott, *supra*.

The trial of this cause in this court is de novo. There was no oral evidence given. The entire proof consists of affidavits introduced in the trial court as exhibits and they appear in the record in the exact condition they were in the trial court. The obligation of this court is to consider and determine this appeal uninfluenced by what was done or concluded in the case before it was presented here. Grandin v. First Nat. Bank of Chicago, 70 Neb. 730, 98 N. W. 70; Nelson v. City of Florence, 94 Neb. 847, 144 N. W. 791; Allen v. Allen, 121 Neb. 635, 237 N. W. 662.

The record does not show that counsel for appellee in performance of their engagement to enforce the judgment against appellant were required to consider novel, difficult, obscure, or undetermined legal problems. The time and effort necessarily required to be devoted to their undertaking in behalf of appellee proved to be quite limited. The circumstances of the case convince that the allowance made by the district court is too large and that a reasonable allowance to appellee as compensation for her counsel for their services in the premises to be paid by appellant is the sum of $500.

The judgment of December 15, 1954, involved in this appeal should be and it is reversed and the cause is remanded to the district court for Lancaster County with directions to allow appellee the sum of $500 to be paid by appellant as compensation of counsel of appellee for their services, and that costs of this appeal be taxed to appellee.

REVERSED AND REMANDED WITH DIRECTIONS.