STATE OF NEBRASKA V. JAMES HAND ET AL.

FILED JUNE 10, 1910. No. 16,071.

Marriage: VALIDITY. A marriage which is prohibited by statute because contrary to the policy of our laws is yet valid if celebrated elsewhere according to the laws of the place where celebrated, even if the parties are citizens and residents of this state, and have gone abroad for the purpose of evading our laws, there being no legislative enactment that such a marriage out of the state shall have no validity here.

ERROR to the district court for Otoe county: HARVEY D. TRAVIS, JUDGE. *Exceptions overruled.*

*D. W. Livingston,* for plaintiff in error.

*John C. Watson, contra.*

FAWCETT, J.

The defendants were informed against by the county attorney of Otoe county for the crime of fornication. There was a trial to the court without a jury upon a stipulation of facts. The court found the defendants not guilty, and ordered that they be discharged. Thereupon the county attorney, by leave of court, under the provisions of section 483 of the criminal code, filed his petition in error in this court, alleging that the finding and judgment of the court below "in acquitting and discharging the said defendants was contrary to law." From the stipulation of facts it appears that the defendants are within the class prohibited by the laws of this state from entering into the marriage relation; that on November 23, 1892, while both defendants were residents of this state, they went into the state of Iowa to celebrate their marriage for the express

purpose of evading the laws of the state of Nebraska. This is the question for our consideration. After their marriage they returned to Omaha, and there lived together as husband and wife for a period of three years. They then removed successively to the states of Utah, Idaho, and Oregon, in all of which states they lived and cohabited together and were known among their friends and acquaintances as husband and wife. Thereafter they returned to Nebraska, where they also lived in that relation until the time of their arrest. It is conceded that by the laws of Iowa the marriage of defendants when consummated there was lawful in that state. Did the court err in finding them not guilty of the charge preferred against them and in ordering their discharge? We think not. In *Medway v. Needham*, 16 Mass. *157, the man, a mulatto, and the woman, a white woman, were inhabitants and residents of Massachusetts. Desiring to be married, and the law of Massachusetts prohibiting such marriage, they went into the neighboring province of Rhode Island and were there married according to the laws of that province, such a marriage not being then prohibited by the laws thereof. In the syllabus the court say: "A marriage, which is good by the laws of the country where it is entered into, is valid in any other country; and although it should appear that the parties went into another state to contract such marriage, with a view to evade the laws of their own country, the marriage in the foreign state will nevertheless be valid in the country where the parties live." In the opinion the court say: "The law now in force in this state not only prohibits the marriage of negroes and mulattoes with white persons, but expressly declares such marriages to be void. But they are only void if contracted within this state, in violation of its laws. If the marriage takes place in a state whose laws allow it, the marriage is certainly good there; and it would produce greater inconveniences than those attempted to be guarded against, if a contract of this solemn nature, valid in a neighboring state, could be dissolved at the will

of either of the parties, by stepping over the line of a state, which might prohibit such marriages." In *Van Voorhis v. Brintnall*, 86 N. Y. 18, in the syllabus, the court say: "The validity of a marriage contract is to be determined by the law of the state where it was entered into; if valid there it is to be recognized as such in the courts of this state, unless contrary to the prohibitions of natural law, or the express prohibitions of a statute. While every state can regulate the *status* of its own citizens, in the absence of express words, a legislative intent to contravene the *jus gentium* under which the question of the validity of a marriage contract is referred to the *lex loci contractus* cannot be inferred; the intent must find clear and unmistakable expression." The court cite *Medway v. Needham, supra,* and also quote from *Putnam v. Putnam*, 8 Pick. (Mass.) 433, the following: "If it shall be found inconvenient, or repugnant to sound principle, it may be expected that the legislature will explictly enact that marriages contracted within another state, which if entered into here would be void, shall have no force within this commonwealth." Acting on that idea, Massachusetts subsequently enacted a law as follows: "When persons resident in this state, in order to evade the preceding provisions and with an intention of returning to reside in this state, go into another state or country and there have their marriage solemnized, and afterward return and reside here, the marriage shall be deemed void in this state." (Gen. St. 1860, ch. 106, sec. 6.) After the passage of that law, the supreme court of Massachusetts in *Commonwealth v. Lane*, 113 Mass. 458, in an opinion by Mr. Chief Justice Gray, on page 464, say: "A marriage which is prohibited here by statute, because contrary to the policy of our laws, is yet valid if celebrated elsewhere according to the laws of the place, even if the parties are citizens and resident of this commonwealth, and have gone abroad for the purpose of evading our laws, unless the legislature has clearly enacted that such marriages out of the state shall have no validity here. This has been repeatedly

affirmed by well-considered decisions." And this seems
to be the overwhelming weight of the better reasoned
cases on the subject. 1 Bishop, Marriage, Divorce and
Separation, sec. 880; *Courtright v. Courtright,* 11 Ohio
Dec. (reprint) 413; *State v. Shattuck,* 69 Vt. 403; *Norman
v. Norman,* 121 Cal. 620, 54 Pac. 143, quoting from *Com-
monwealth v. Lane, supra; Sturgis v. Sturgis,* 51 Or. 10,
93 Pac. 696.

To hold otherwise would be to render void numberless
marriages and to make illegitimate thousands of children
the country over. In 1 Bishop, Marriage, Divorce and
Separation, sec. 882, this thought seems to have been in
the mind of the author. He says: "It was formerly com-
mon for English parties, wishing to intermarry without
a compliance with their own marriage acts, to go into
Scotland and there interchange the matrimonial consent
simply in the presence of witnesses. Gretna Green was
the most convenient point for the required hasty visit;
and thus Gretna Green marriages became famous, and
there was no question of their validity. But parliament, in
1856, by 19 and 20 Victoria, ch. 96, sec. 1, put an end to
this by declaring that thereafter 'no irregular marriage
contracted in Scotland by declaration, acknowledgment,
or ceremony shall be valid unless one of the parties had
at the date thereof his or her usual place of residence
there, or had lived in Scotland for 21 days next
preceding such marriage.'" We do not question the
power of a state to pass a law similar to that passed by
Massachusetts, as hereinbefore set out, but our legislature
has not seen fit to do so. On the contrary, section 5316
Ann. St. 1907, provides: "All marriages contracted with-
out this state, which would be valid by the laws of the
country in which the same were contracted, shall be valid
in all courts and places in this state." See *Gibson v.
Gibson,* 24 Neb. 394; *Bailey v. State,* 36 Neb. 808; *Hills
v. State,* 61 Neb. 589.

While the decisions upon this point are not uniform
and authorities can be found opposed to those above cited,

the reasoning of such authorities does not appeal to us as being sound in law or for the good of society. The district court did not err in its construction of the law, and the exceptions of the state are, therefore,

OVERRULED.