ALFRED T. STALEY V. STATE OF NEBRASKA.

FILED JUNE 26, 1911.  No. 17,105.

1. Bigamy: INTENT. In a trial for bigamy under a statute which does not make intent an element of the crime, it is no defense for accused to prove he acted in good faith on advice of counsel that a former marriage to his cousin was void, and that a deputy county attorney threatened him with prosecution for living with her, where such former marriage is valid.

2. Criminal Law: APPEAL: ADMISSION OF EVIDENCE. The admission of evidence not prejudicial to accused is not a ground of reversal.

ERROR to the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*George A. Adams* and *W. W. Towle,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

ROSE, J.

In a prosecution by the state, Alfred T. Staley, defendant, was convicted of bigamy, and for that offense was sentenced to serve a term of one year in the penitentiary.

As plaintiff in error, he is now seeking a reversal of the judgment against him.

This is defendant's second conviction for the same offense; the first having been reversed as erroneous. *Staley v. State,* 87 Neb. 539. A statute declares that a marriage in this state between first cousins is void. Comp. St. 1909, ch. 52, sec. 3. Though that relationship exists between defendant and Hettie Bixler, they were married in Council Bluffs, Iowa, in 1907, when they were residents of Omaha. Under the laws of Iowa the marriage is valid there, and consequently it is likewise valid here. *State v. Hand,* 87 Neb. 189. They lived together as husband and wife until February, 1908, when he left her in Omaha, where they were at the time residing. Without procuring a divorce, defendant was married to Pearl Stoner, in Lancaster county, August 7, 1909, though his former wife is still living. These facts and conclusions are not in dispute.

Defendant argues that the conviction should not be permitted to stand for the following reasons: In entering into the second marriage, he did not intend to commit a crime. He believed in good faith that his marriage with his cousin was void, and that a divorce or an annulment of the marriage was entirely unnecessary. He was so advised by three lawyers and conscientiously relied upon their advice. A deputy county attorney of Douglas county told defendant the marriage was void, and threatened him with prosecution if he did not abandon his unlawful relations with his cousin. During the trial defendant offered to prove these facts, and the exclusion of proof offered for that purpose is his principal ground of complaint. Can he excuse his bigamy by showing that he was cowed by the threat of the officer and that in good faith he acted on the advice of counsel? The validity of the marriage with his cousin was a question of law, and not of fact. Ignorance of facts, where there is no criminal intent, often excuses offenses, but this rule does not in general extend to ignorance of the law. That one accused of crime had endeavored to ascertain the law and had been misled

by counsel or a magistrate is not generally a defense. 1 Bishop, New Criminal Law, sec. 294; *State v. Goodenow,* 65 Me. 30; *Weston v. Commonwealth,* 111 Pa. St. 251. This principle applies to offenses against the marriage relation. Bishop, Statutory Crimes (3d ed.) sec. 662; *State v. Goodenow,* 65 Me. 30; *State v. Sherwood,* 68 Vt. 414; *People v. Weed,* 29 Hun (N. Y.) 628. Courts and text-writers recognize the fact that hardships sometimes result from the enforcement of the ancient maxim, "Ignorance of the law excuses not"; but it cannot be abandoned without serious consequences to society. The people in adopting the constitution fully appreciated the possibility that injustice in exceptional cases would result from the enforcement of laws enacted to prevent crime and to punish criminals. To afford protection in such instances was one of the purposes in view when the pardoning power was conferred upon the governor.

That defendant was free from the criminal intent essential to a crime is the principal feature of an able argument in his behalf. The statute denouncing bigamy does not make intent an element of the crime. It provides: "That if any married person, having a husband or wife living, shall marry any other person, every person so offending shall be imprisoned in the penitentiary not more than seven years nor less than one year." Criminal Code, sec. 201. Malice may be implied from a wilful violation of the statute and a reckless disregard of existing marital relations. Both defendant and his cousin-wife-testified there never had been any domestic trouble to suggest a separation. There is proof that he knew that she was pregnant when he left her. Under such circumstances he had an accusing conscience when he formed the purpose to abandon her, unless he was devoid of all marital sentiment and of every worthy instinct of paternity. These natural impulses of the human heart ought to have given a warning signal, even if the statutes had been silent on the subjects of bigamy and divorce. To the threatened prosecution in a court of justice, his valid

marriage would have been a complete defense. If, however, he was intimidated by threats of prosecution, he could have lived apart from his wife in safety during the time required for the determination of his social status in a court of justice. The state is interested in the consequences of the relation created by marriage. *Willits v. Willits*, 76 Neb. 228. For the good of society and for the protection of the family, marriage is carefully guarded by law. After becoming the husband of his cousin, his obligations to her, to his unborn child, and to society required care and diligence on his part before leaving his wife and marrying again without a divorce. He knew it was at least doubtful whether the marriage was void. Otherwise he would not have asked the advice of counsel. The deputy county attorney was the prosecuting officer of the state, and not the attorney for defendant. Counsel may give advice, but the duty of adjudicating whether a marriage is void is a function of the courts. Lawyers and laymen alike know this. In civil controversies involving property rights only, individuals often refuse to act without an order of court; but, if the evidence on behalf of the state is believed, defendant, on the mere advice of counsel that his marriage was void, was willing to abandon his wife as an adulteress and leave her with the prospect that she would become the mother of a bastard child. The obligations of one who has voluntarily entered into the marriage relation require a greater degree of care than that exercised by defendant. He acted on the advice of counsel at his peril, and under the law it is no defense in this case.

It is further insisted that the state was erroneously permitted to introduce testimony that a child was the issue of defendant's marriage with his cousin. Defendant himself testified to that fact, and it is perfectly plain on the face of the record that he was in nowise prejudiced by such proof in his attempt to establish the defense already outlined.

It is suggested, further, that the court erred in admit-

ting in evidence an Iowa statute showing that it is not unlawful for cousins to marry in that state. An examination of the record shows that the ruling assailed is sanctioned by former holdings of this court. No prejudicial error has been found, and the judgment is

AFFIRMED.

SEDGWICK, J., took no part.