**UNITED STATES ex rel. MODIANOS v. TUTTLE, Immigration Com'r.**

(District Court, E. D. Louisiana. New Orleans Division. December 2, 1925.)

No. 17320.

1. **Marriage** ⊜⇒3—**State has right to declare what marriages will be recognized, regardless of whether participants are domiciled within or without state, and statute invalidating marriages by procuration, wherever performed, would be valid.**

State has right to declare what marriages will be recognized, regardless of whether participants are domiciled within or without its borders, if its purpose is declared in unmistakable language, and Congress has no power to legislate thereon, and state statute, declaring that no marriage by procuration, contracted within or without state, should be valid within state, would be valid.

2. **Marriage** ⊜⇒3—**Marriages lawful in state where contracted are lawful everywhere, except as to those contrary to general view of Christendom, and those declared invalid by law-making authority as matter of policy.**

Marriages lawful in state where contracted are valid everywhere, except as to marriages contrary to general view of Christendom, and those which law-making authority has declared invalid as matter of general policy.

3. **Marriage** ⊜⇒3—**Marriage celebrated by proxy in Turkey under laws of such country held not invalid, as contrary to general views of Christendom.**

Marriage of naturalized citizen, celebrated by proxy in Turkey under its laws, husband remaining in Louisiana, *held* not invalid, as contrary to general views of Christendom.

4. **Marriage** ⊜⇒3—**State statute prohibiting marriage by procuration held applicable only to marriages contracted within state, and marriage of citizen celebrated by proxy in Turkey was valid, and wife was entitled to admission to United States, without regard to whether Turkish quota had been exhausted (Rev. Civ. Code La. arts. 109, 113).**

Rev. Civ. Code La. art. 113, by declaring that certain marriages performed without the state are invalid within state, excepts from such effect all others, and under maxim, "Expressio unius est exclusio alterius," article 109, prohibiting marriages by procuration, applies only to such marriages contracted within state, and marriage of citizen celebrated by proxy in Turkey prior to March 17, 1922, while husband remained in Louisiana, was valid, in absence of fraud or attempt to evade laws of this country, and wife became citizen of United States, entitled to admission, regardless of whether Turkish quota had been exhausted.

Habeas Corpus. Proceeding by the United States, on the relation of Mehmet Modianos, against W. W. Tuttle, Immigration Commissioner, to determine right of Melahat Nazif to enter United States as wife of relator, an American citizen. Peremptory writ granted, and said Melahat Nazif ordered released.

Woodville & Woodville, of New Orleans, La., for plaintiff.

L. P. Bryant, Jr., of New Orleans, La., for defendant.

DAWKINS, District Judge. Mehmet Modianos was born a Turkish subject, but prior to March 17, 1922, had become a naturalized American citizen domiciled in the state of Louisiana. Melahat Nazif was likewise born in Turkey. On the date just mentioned there was celebrated in the city of Constantinople a ceremony by which the parties attempted to be married. The intended husband, Mehmet Modianos, remained in the city of New Orleans, but was represented at the ceremony by proxy. By the law of Turkey such a marriage is valid, and, if entitled to recognition in Louisiana, under the federal statute of that date, Melahat likewise became an American citizen, with the right as such to admission into the United States. When she arrived, the Turkish quota of immigrants for the month of August, 1923, had been exhausted, and she was excluded solely upon that ground. Thereupon Modianos instituted the present proceeding by habeas corpus to test this ruling of the commissioner and Secretary of Labor, contending that Melahat is an American citizen.

The validity of the marriage is assailed upon the ground that its celebration by procuration was prohibited in Louisiana, and, since Modianos was a citizen of this state and controlled by its laws, he could not contract a marriage in that manner, although the ceremony took place in Turkey, where otherwise it would have been legal.

Revised Civil Code of Louisiana, art. 109, declares: "No marriage can be contracted or celebrated by procuration." The Supreme Court of Louisiana appears never to have had occasion to construe this article, either in its application to marriages within or without the state; so that the decision here must necessarily be one of first impression.

[1] It seems to be well settled that each sovereign state (Congress has no power to legislate upon the subject of marriages within the several states, and has never attempted to regulate the effect in this country of those solemnized in foreign jurisdictions) has the right to 'declare what marriages it will or will not recognize, regardless of whether the participants are domiciled within or without its borders, provided that purpose is declared in unmistakable language. R. C. L. vol. 18, p. 386 et seq., verbo "Marriage"; Id. vol. 5, pp. 995 and 999 et seq., verbo "Conflict of Laws," and authorities cited in footnote No. 6; Hills

v. Nebraska, 61 Neb. 589, 85 N. W. 836, 57 L. R. A. 155, and note at page 161 et seq. See, also, note to State v. Hand (87 Neb. 189, 126 N. W. 1002) 28 L. R. A. (N. S.) page 753 et seq. Hence, if it was the intention of the Louisiana lawmaker, as a matter of general policy, to provide that no marriage by procuration, whether contracted within or without the state, should be valid within the state, then I think it undoubtedly had the power so to do, especially in cases like the present, where the one attempting to consummate the relation by that means was domiciled in and a citizen of Louisiana. See discussion and authorities cited in note to Hills v. State, 57 L. R. A. page 161 et seq.

[2] It therefore becomes a question of analyzing the codal provision, not only according to the ordinary rules of statutory construction, but in the light of general principles applicable to the peculiar subject of marriage. It is the uniform policy of civilized countries, especially those affected by the influence of Christianity, to encourage marriage as the basis of organized society, and to recognize as valid all such as do not offend the essentials of that faith. From this flows the doctrine that a marriage, lawful in the state where contracted, is valid everywhere. R. C. L. vol. 5, pp. 388–993, verbo "Conflict of Laws." To this general rule, however, there are two well-recognized exceptions—i. e., first, as to those marriages which are contrary to the general view of Christendom; and, secondly, those which the law-making authority has declared shall not be allowed any validity as a matter of general policy. Therefore, to sustain the contention of the government, I think it necessary to find that the case at bar falls within one of these exceptions.

[3, 4] As to the first, there appears nothing in the circumstances of the case conflicting with the views of Christendom. It is not denied that, if Modianos had gone to Turkey and there married Melahat, according to the laws of that country, the same would have been valid, and it is only by virtue of the cited provision of the Louisiana code, which it is contended prohibited him, a citizen of this state, from sending his proxy instead, that the marriage is claimed to be void. Is there anything in the language of the article which can reasonably be said to give it the effect of a declaration of general policy, in the sense that it was intended to apply to all marriages, whether celebrated within or without the state? As heretofore quoted, the wording of the provision is: "No marriage can be contracted or celebrated by procuration." It is found in chapter 3 of title IV of the Code,

under the heading "Husband and Wife." It will be observed that the provision itself does not say whether it shall apply alone to marriages contracted within the state or not, but in article 113, found in chapter 4 of the same title, the Legislature has specifically declared that certain provisions, found in chapter 2 of the same title, shall apply to marriages in other states, where either or both of the parties, at the time, were domiciled in this state, and after the marriage "return to reside permanently in this state."

Article 113 as it now reads is as follows: "Every marriage contracted under the other incapacities or nullities enumerated in the second chapter of this title may be impeached either by the married persons themselves, or by the person interested, or by the Attorney General; however, first, that marriages heretofore contracted between persons related within the prohibited degrees either or both of whom were then and afterwards domiciled in this state, and were prohibited from intermarrying here, shall nevertheless be deemed valid in this state, where such marriages were celebrated in other states or countries under the laws of which they were not prohibited; second, that marriages hereafter contracted between persons, either or both of whom were domiciled in this state and are forbidden to intermarry shall not be deemed valid in this state,—because contracted in another state or country where such marriages are not prohibited, if the parties after such marriage return to reside permanently in this state."

As it stood when adopted as a part of the Code of 1870, this article simply said: "Every marriage, contracted under the other incapacities or nullities enumerated in the second chapter of this title, may be impeached, either by the married persons themselves, or by any person interested, or by the Attorney General."

The said article was first changed to its present form by Act 129 of 1904, and again in 1912 (Acts 1912, No. 54) it was re-enacted without change. It is apparent, therefore, that the purpose was to validate those marriages which had been contracted prior to 1904, as well as those between that year and 1912, and to apply the prohibition to the future. It is thus seen that the lawmaker has specifically declared the prohibitions which shall apply to marriages contracted without the state, and thereby clearly excepted from such effect all others, including those contracted by procuration; and by the maxim, "Expressio unius est exclusio alterius," article 109 should be held to apply only to marriages contracted in Louisiana. It

seems clear, therefore, that the Legislature of Louisiana only intended to prohibit marriages by procuration, where same were contracted within the state, and, unless it plainly appears that a contrary purpose existed, full effect can be given to the law by restricting it to such as fall within that class. See, also, note to Hills v. State, 57 L. R. A. page 161 et seq.

There is no suggestion in this case that the marriage was fraudulent, or contracted to avoid any of the laws of this country; but the mode adopted was for the convenience of the parties, and to save the expense and loss of time incident to a trip to Turkey on the part of relator. They have since been married according to the laws of this state, and have continued to live together, and a child has been born.

My conclusion is that the marriage of relator with Melahat Nazif was valid, and that she became a citizen of the United States, entitled to admission, without regard to whether the quota of Turkish immigrants had been exhausted or not. The writ, therefore, is made peremptory, and the said Melahat ordered released.