**SNYDER v. BUCK.**

Civ. A. No. 1225-47.

District Court of the United States for the
District of Columbia.

Jan. 23, 1948.

904

John Geyer Tausig, of Washington, D. C., for plaintiff.

George Morris Fay, U. S. Atty., D. Vance Swann and William C. Brewer, all of Washington, D. C., for defendant.

HOLTZOFF, Associate Justice.

This is an action by the widow of a Naval officer for relief in the nature of a mandamus to direct the Paymaster General of the Navy to pay her an amount equal to six months' pay of the deceased at the rate received by him at the time of his death.

The pertinent statute provides that upon the death, from wounds or disease, of any officer or enlisted man on the active list of the regular Navy or regular Marine Corps, the Paymaster General of the Navy shall cause to be paid to the widow an amount equal to six months' pay at the rate received by the deceased at the time of his death. If there be no widow, the payment is to be made to his child or children, and if there be no widow or child, then to any other dependent relative of the deceased previously designated by him.[1] The plaintiff and the

[1] The pertinent provisions of the statute, 58 Stat. 129, U.S.C.A., title 34, § 943, read as follows: "Immediately upon official notification of the death from wounds or disease, not the result of his or her own misconduct, of any officer, enlisted man, or nurse on the active list of the Regular Navy or Regular Marine Corps, or on the retired list when on active duty, the Paymaster General of the Navy shall cause to be paid to the widow, and if there be no widow, to the child or children, and if there be no widow or child, to any other dependent relative of such officer, enlisted man, or nurse previously designated by him or her, an amount equal to six months' pay at the rate received by such officer,

deceased were married on July 3, 1945, at Elkton, Maryland, and lived together as man and wife until the husband's death on March 10, 1946. The Paymaster General of the Navy declined to pay the statutory allowance to the plaintiff, on the alleged ground that her marriage to the deceased was invalid. The basis for this conclusion was that the plaintiff had been previously married; that the prior marriage ended in a divorce obtained in Mexico, although neither of the parties to the marriage was a resident of that country at the time when the divorce was granted; that this divorce was ineffective; and that, therefore, the plaintiff was not free to contract the second marriage. As the deceased left no children, the Navy Department paid the allowance to his sister.

The first question to be determined is whether the ruling of the Navy Department is subject to judicial review. It may be assumed, without deciding, that prior to the enactment of the Administrative Procedure Act of June 11, 1946, 5 U.S.C.A. § 1001 et seq., the action of the Navy Department would have been final and conclusive, and could not have been re-examined by the courts. A long, unbroken line of authorities upholds the doctrine that a writ of mandamus may not be granted to compel the performance of a duty on the part of a public officer involving the determination of questions of law or fact, as this remedy is limited to ministerial acts, Brunswick v. Elliott, 70 App.D.C. 45, 103 F.2d 746; Southern Transp. Co. v. Interstate Commerce Comm., 61 App.D.C. 284, 61 F.2d 925.[2] The question arises, however, whether the Administrative procedure Act, Act of June 11, 1946, U.S.C.A., Title 5, Secs. 1001–1011, has changed the law in this respect. We, therefore, proceed to an analysis of this statute.

Section 2(a) of the Act defines the extent of the statute. It in effect provides that the Act applies to each authority of the Government of the United States, except the Congress, the Courts, the territorial governments, and the District of Columbia. For certain purposes, it also excepts courts-martial and military commissions as well as military or naval authority exercised in the field in time of war, or in occupied territory. It also excludes functions performed under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., and the Surplus Property Act of 1944, 50 U.S.C.A. Appendix, § 1611 et seq.[3] The Navy De-

---

enlisted man, or nurse at the date of his or her death. The Secretary of the Navy shall establish regulations requiring each officer and enlisted man or nurse having no wife or child to designate the proper dependent relative to whom this amount shall be paid in case of his or her death. Said amount shall be paid from funds appropriated for the pay of the Navy and pay of the Marine Corps, respectively: *Provided,* That if there be no widow, child, or previously designated dependent relative, the Secretary of the Navy shall cause the amount herein provided to be paid to any grandchild, parent, brother or sister, or grandparent shown to have been dependent upon such officer, enlisted man, or nurse prior to his or her death, *and the determination of such fact by the Secretary of the Navy shall be final and conclusive upon the accounting officers of the Government * * *.*" (Emphasis supplied.)

[2] See also Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256.

[3] The pertinent portions of Section 2 of the Administrative Procedure Act,

read as follows: "(a) *Agency.* 'Agency' means each authority (whether or not within or subject to review by another agency) of the Government of the United States other than Congress, the courts, or the governments of the possessions, Territories, or the District of Columbia. Nothing in this Act shall be construed to repeal delegations of authority as provided by law. Except as to the requirements of section 3, there shall be excluded from the operation of this Act (1) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them, (2) courts martial and military commissions, (3) military or naval authority exercised in the field in time of war or in occupied territory, or (4) functions which by law expire on the termination of present hostilities, within any fixed period thereafter, or before July 1, 1947, and the functions conferred by the following statutes: Selective Training and Service Act of 1940; Contract Settlement Act of 1944; Surplus Property Act of 1944."

partment, therefore, is not exempted from the provisions of the statute, except in respect to naval authority exercised in the field in time of war or in occupied territory, and in respect to courts-martial. All other activities of the Navy Department, including the one involved in this case, are within the scope of the Act.

Judicial review of administrative action is governed by Section 10 of the Act.[4] Two classes of actions are excepted from the right of judicial review: first, those as to which statutes preclude judicial review; and, second, those as to which agency action is by law committed to agency discretion. A statute precluding judicial review may be one which expressly provides that any administrative action taken thereunder may not be re-examined and set aside by the courts. Or without expressly so asserting, it may clearly and affirmatively indicate that the action of the administrative agency is to be deemed final and conclusive for all purposes. For example, some of the statutes relating to the activities of the Veterans' Administration have been so construed, Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256.

In the case at bar, however, there is no such indication. On the contrary, the opposite inference is warranted. The first proviso of the statute governing the payment of the allowance provides that the determination by the Secretary of the Navy of the fact that there is no widow shall be final and conclusive *upon the accounting officers of the Government.* The obvious meaning of this limitation is that the rulings of the Secretary of the Navy in such matters are not reviewable by the Comptroller General. Expressio unius est exclusio alterius. On the basis of this canon of statutory construction, this provision should be interpreted as meaning that the determination of the Secretary of the Navy shall be final and conclusive on the Comptroller General of the United States, but on no one else. The conclusion irresistibly follows that the statute in question does not preclude judicial review.

The second exception comprizes agency action which is by law committed to agency discretion. Among many illustrations of such actions are the making of contracts, the making of loans by lending agencies of the Government, the issuance of passports and visas by the Department of State, the issuance of visitors' permits by the Immigration and Naturalization Service, and countless other matters in which the agency is permitted by law to reach a conclusion on the basis of its own judgment and discretion. Obviously, the action involved in the instant case is not within the realm of administrative discretion, as the

---

4 The pertinent portions of Section 10 of the Administrative Procedure Act are as follows:

"Sec. 10. Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

"(a) *Rights of review.*—Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.

"(b) *Form and venue of action.*—The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law.

"(c) *Reviewable acts.*—Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, for any form of reconsideration, or (unless the agency otherwise requires by rule and provides that the action meanwhile shall be inoperative) for an appeal to superior agency authority."

statute creates a legal duty on the part of the Paymaster General of the Navy to pay the prescribed allowance on the occurrence of the specified contingency. It follows, hence, that the ruling involved in the instant case is not within the excepted categories in respect to judicial review.

 Subsection (a), § 10, confers the right to secure a judicial review on any person adversely affected or aggrieved by any agency action within the meaning of any relevant statute. The effect of this provision is, on the one hand, to exclude from the right of judicial review all Governmental action affecting the public generally, but not impinging on the legal rights of any individual;[5] and, on the other hand, to permit an appeal to the courts by any person whose individual legal rights are adversely affected. Obviously, the plaintiff is aggrieved by the defendant's denial of her claim to a widow's gratuity and, therefore, is accorded the privilege of a resort to the courts.

 Subsection (c) provides that every agency action made reviewable by statute and *every final agency action for which there is no other adequate remedy* in any court shall be subject to judicial review.

The conclusion is inescapable that under the Administrative Procedure Act every final agency action is subject to judicial review at the behest of any person whose legal rights are adversely affected, unless the action is taken under a statute precluding judicial review, or unless the agency action is by law committed to agency discretion.

 In this connection, it is desirable to consider subsection (b) of Section 10, which provides that the form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute, or in the absence or inadequacy thereof, any *applicable* form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. In other words, if there is provided an adequate specified statutory review proceeding in respect to any specified agency action, this form of proceeding should be pursued. In the absence or inadequacy of any such proceeding, recourse may be had to any applicable form of legal action. By the word "applicable" is meant "appropriate or suitable." Consequently, the aggrieved party may invoke any suitable or appropriate form of proceeding or remedy.

Thus the Standard Dictionary defines the word "applicable" as follows: "Applicable, capable of being applied; suitable or fit for application; relevant, fitting." Webster's Dictionary contains the following definition: "Capable of being applied; fit; suitable; pertinent." Black's Law Dictionary, 3d Ed., p. 125, defines the term as follows: "Applicable, fit, suitable, pertinent, or appropriate." The word "applicable", therefore, is not a term of limitation but of description.

 The reports of the Committees on the Judiciary of the Senate and House of Representatives, concerning this legislation clearly indicate that the foregoing conclusions are in accord with the legislative intent. Thus the Report of the Senate Committee on the Judiciary (S. Rept. No. 752, 79th Congress) submitted by Senator McCarran, states that the legislation "sets forth a simplified statement of judicial review designed to afford a remedy for every legal wrong". This Report in discussing Section 10(a) makes the following observation:

"Any person suffering legal wrong because of any agency action, or adversely affected within the meaning of any statute, is entitled to judicial review.

"This subsection confers a right of review upon any person adversely affected in fact by agency action or aggrieved within the meaning of any statute."

The Report contains the following comment in respect to Section 10(c):—"Agency

---

[5] E.g. a taxpayer may not sue to enjoin unlawful expenditure of public funds, Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; a power company may not secure an injunction against the making of a grant or loan to a Governmental unit maintaining a competing plant, Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374.

908

action made reviewable specially by statute or final agency action for which there is no other adequate judicial remedy is subject to judicial review."

A similar statement is found in the Report of the House Committee on the Judiciary (H.Rept.No. 1980, 79th Cong.2d Sess.).

The foregoing analysis irresistibly leads to the conclusion that every final agency action which is not in the realm of discretion, or in respect to which no statute precludes judicial review, and which adversely affects the legal rights of any person, is subject to judicial review under the Administrative Procedure Act. The form of review is any suitable or appropriate proceeding, unless an adequate remedy is otherwise provided by a special statute. A review may, for example, be had by an action for a declaratory judgment, by an action for a restraining or mandatory injunction, by a petition for a writ of habeas corpus, or some other fitting remedy. This result necessarily subjects to judicial review a large group of administrative actions which previously could not have been re-examined or set aside by the courts. This category includes numerous determinations of private rights, in respect to which a writ of mandamus did not lie, because they involved functions that were not purely ministerial, but required a decision on questions of law or questions of fact by the administrative agency. On the other hand, the countless diversified activities of executive and administrative agencies that are committed to their discretion or that do not impinge on private rights, remain unaffected. Consequently, this interpretation of the Act, which appears to this Court to be inescapable, will not impede or interfere with the operations of the Government. On the other hand, it will extend the right of ju-

dicial review to all persons whose private rights are adversely affected by final agency action that is not discretionary in character and in respect to which no statute bars judicial review. This result seems sound and salutary. It is in the interest of protecting and safeguarding the rights of the individual. In any event, it is clear that this is what the Congress intended to accomplish.[6]

■ In view of the foregoing discussion, rulings of the Navy Department under the statute involved in the instant case have become subject to judicial review under the provisions of the Administrative Procedure Act.

■ We, therefore, reach a consideration of the ruling of the Navy Department on the plaintiff's claim for a widow's allowance. Section 10(e) of the Administrative Procedure Act, which relates to the scope of judicial review, authorizes the reviewing court to decide all relevant questions of law and to set aside agency action found not to be in accordance with law. As in this case the facts are stipulated, the only question for the Court to determine is whether the Navy Department correctly applied the law to the facts.

The plaintiff married one James John Ford on October 4, 1937 in Lansdowne, Pennsylvania. Thereafter she and her husband resided in New Jersey. They were separated in November, 1944. On April 27, 1945 the plaintiff obtained a divorce in the State of Chihuahua, Republic of Mexico. Her husband filed an answer in the divorce proceeding in which he joined in the prayer for a decree of divorce. Neither party to the suit was a resident of Mexico and neither personally appeared in that country. On July 3, 1945 the plaintiff married Charles Richard Snyder, a member of the naval personnel. At the time of their marriage, both parties were

[6] The Court is not unmindful of the fact that some statements have been made to the effect that Section 10 is merely declaratory of existing law of judicial review, and does not confer jurisdiction on the courts beyond that which they already had, e. g. Olin Industries v. National Labor Relations Board, D.C.Mass., 72 F.Supp. 225. While this Court has examined many of these statements, it is unable to agree with them. On the other hand, McGranery, J., in United States v. Carusi, D.C.E.D. Pa., 72 F.Supp. 193, 196, said: "The Administrative Procedure Act may conceivably provide judicial review of the operation of these agencies where none existed before, although the Court expresses no opinion on that."

residents of New Jersey and continued to reside in that State during their entire married life. The marriage, however, was performed in Elkton, Maryland. The husband died on March 10, 1946. At the time of his death the parties were living together.

The plaintiff filed an application as the widow of Charles Richard Snyder for an allowance under the statute heretofore mentioned. The Bureau of Naval Personnel, after an investigation, concluded that the divorce obtained by the plaintiff in Mexico from her first husband was not entitled to recognition and that, therefore, her subsequent marriage to the deceased was invalid. On this basis, the Navy Department declined to approve the plaintiff's claim for an allowance equal to six months' pay of the deceased, but paid this sum to his sister. Whether the plaintiff is entitled to the widow's allowance depends on whether her marriage to the deceased was valid or even if it was invalid, whether it is subject to a collateral attack by an administrative agency.

The parties entered into the married state by a ceremony performed by a minister. The inference is clear that they considered themselves free to marry. They lived together as husband and wife until the husband's death, and no doubt deemed themselves lawfully married. The deceased apparently never thought there was any infirmity in his marriage. He named his wife as the beneficiary of his life insurance policy under the National Life Insurance Act and also designated her as the proper recipient of a widow's allowance. He evidently went to his death without questioning or doubting the validity of his marriage.

The marriage was celebrated in Maryland, although both before and after the marriage ceremony the parties were residents of the State of New Jersey. The preliminary question to be determined is whether the law of New Jersey or the law of Maryland is applicable. It is well settled that the law of the place where a marriage is celebrated governs the validity of the marriage. Loughran v. Loughran, 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219; Rhodes v. Rhodes, 68 App.D.C. 313, 96 F. 2d 715; United States ex rel. Modianos v. Tuttle, D.C., 12 F.2d 927; Franzen v. E. I. Du Pont De Nemours & Co., 3 Cir., 146 F.2d 837; Hitchens v. Hitchens, D.C., 47 F.Supp. 73; Fensterwald v. Burk, 129 Md. 131, 98 A. 358, 3 A.L.R. 1562; Beale, The Conflict of Laws, Vol. II, pp. 667–669; Restatement, Conflict of Laws, pp. 185–187. This doctrine applies even if the parties are domiciled in a State different from that in which the marriage is celebrated, Hitchens v. Hitchens, supra; Fensterwald v. Burk, supra. The only exception to the general principle comprizes incestuous and polygamous marriages, which are abhorrent to the general standards of morality. Consequently, in the instant case the validity of the marriage must be determined by the law of Maryland rather than by the law of New Jersey.

The Code of Maryland, Article 62, Section 16, provides, in part, as follows: "The circuit court for the several counties and the superior court of Baltimore City may, upon petition of either of the parties, inquire into, hear and determine and the circuit court for the several counties and the criminal court of Baltimore, on indictment, may inquire into, hear and determine the validity of any marriage and *may declare* any marriage contrary to the table in this article, or *any second marriage, the first subsisting, null and void; * * *.*"

In Harrison v. State, 22 Md. 468, 490, 85 Am.Dec. 658, the Court held that a marriage within the prohibited degrees was not void but voidable.

The statute just quoted was construed and applied in Ridgely v. Ridgely, 79 Md. 298, 29 A. 597, 25 L.R.A. 800. In that case a woman, who had resided in Maryland with her husband, went to South Dakota and obtained an absolute divorce in that State. Thereafter she returned to Maryland and contracted another marriage. Her first husband brought a suit in equity to annul the second marriage on the ground that the divorce procured in South Dakota was void and that, therefore, the wife was not competent to contract a second marriage. The court held that the second marriage might be annulled only in an action brought by one of the parties thereto. The conclusion seems to follow that under the law of Maryland, a marriage contract-

ed by a person who is not free to marry is voidable, and may be annulled only by a decree of a court rendered in an action brought by one of the parties to the marriage.

Since in this instance no action to annul the marriage was ever brought by either party during the husband's lifetime, under the law of Maryland the marriage is not subject to attack collaterally. It follows, hence, that the plaintiff must be deemed to be the widow of the deceased and, as such, entitled to a widow's allowance.

In this connection it may be observed that to brand a marriage as invalid is a solemn matter. Such an adjudication may ordinarily be made only by a court of competent jurisdiction after a trial at which all interested parties have an opportunity to be heard. It is at best questionable whether an administrative agency, such as the Veterans' Administration, the Navy Department, or the War Department, has any authority to hold a marriage invalid in an ex parte manner on the basis of its own investigation. As a matter of public policy, it does not appear appropriate that an administrative agency of the Government should delve and dig into family skeletons in an endeavor to upset a marriage openly celebrated and apparently valid on its face, and which was deemed lawful by the parties thereto in their lifetime. The Congress did not intend that the Navy Department should pursue such a course, as is evidenced by the fact that the statute expressly requires payment of the widow's allowance to be made "immediately" upon official notification of the death of the deceased. Obviously, the Congress did not intend to vest in the Navy Department any authority to make exhaustive administrative investigations for the purpose of passing on the validity of a marriage apparently valid on its face.

The Court will accordingly render judgment directing the Paymaster General of the Navy to pay to the plaintiff the statutory widow's allowance.

The complaint prays for relief in the nature of a mandamus. This relief is inappropriate, in the view of the fact that the act required to be performed is not purely ministerial. The plaintiff is entitled, however, to whatever judgment the evidence warrants, irrespective of whether it is the precise relief prayed for in the complaint.[7]

Under Section 10(b) of the Administrative Procedure Act, any applicable (i.e. suitable) form of relief may be granted. The statute expressly suggests a mandatory injunction as a possible form of relief. Accordingly, the judgment will take the form of a mandatory injunction directing the necessary payment. It is sufficient that the Paymaster General of the Navy be the sole defendant, as in the light of the decision of the Supreme Court in Williams v. Fanning, 68 S.Ct. 188, the Secretary of the Navy is not an indispensable party.

Judgment for the plaintiff granting a mandatory injunction directing the defendant to pay to the plaintiff an amount equal to six months' pay at the rate received by the deceased at the time of his death.

Submit proposed findings and conclusions of law and proposed form of judgment.

---

[7] Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.SC.A following section 723c