REQUESTED BY: Senator Jim Jones District 43
You have requested the opinion of this office as to the validity in Nebraska of same-sex marriages contracted in another state. Specifically, you have asked whether Nebraska is required to recognize a same-sex marriage contracted in the State of Hawaii, and whether Nebraska would be required to honor a same-sex marriage license from Hawaii if legislation was adopted in Nebraska prohibiting recognition of same-sex marriages, either before or after such marriages were legalized in Hawaii.
The issues raised by your request have recently become of nationwide concern, with legislation reportedly adopted in at least two states, and being considered in thirty others. The source of the concern is a case now pending in the State of Hawaii.
In Baehr v. Lewin, 852 P.2d 44 (Hawaii 1993), same-sex couples whose applications for marriage licenses were denied filed suit alleging that denial of the marriage licenses violated their rights under the Hawaii Constitution. The Hawaii Supreme Court concluded there is no fundamental right for same-sex couples to marry, but concluded Hawaii's marriage statutes restricting marriage to male-female unions established a sex-based classification that is subject to strict scrutiny. The court said such laws are presumed to be unconstitutional unless the state shows a compelling state interest which justifies the classification. Id. at 64.
The Hawaii Supreme Court remanded the case to a lower court where the Attorney General of Hawaii must overcome the presumption of unconstitutionality by demonstrating the statute furthers compelling state interests and is narrowly drawn to avoid unnecessary abridgements of constitutional rights. Id. at 68. The Hawaii Attorney General's Office has informed this office that the case on remand will go to trial on August 1, 1996.
I. Whether Nebraska is Required to Recognize Same-Sex Marriages Contracted in Another State.
 A. Background
Marriage is referred to in Nebraska law as "a civil contract, to which the consent of the parties capable of contracting is essential." Neb. Rev. Stat. § 42-101 (1993). The Nebraska Supreme Court has stated that "Marriage . . . is also and specifically a status or personal relation in which the state is deeply concerned and over which the state exercises exclusive dominion." Buchholz v. Buchholz, 197 Neb. 180, 182,248 N.W.2d 21 (1976) (quoting Maynard v. Hill, 125 U.S. 190 (1888)). "The law of marriage in this country traces its origin back to the ancient decrees of the church and the civil law which were the basis of the matrimonial laws of England. . . ." Christensen v.Christensen, 144 Neb. 763, 767, 14 N.W.2d 613 (1944).
Although the Nebraska statutes do not specifically prohibit same-sex marriages, a prior Nebraska Attorney General's Opinion concluded that same-sex marriages are not recognized under Nebraska law. 1977-78 Rep. Att'y Gen. 170 (Op. No. 113, June 27, 1977). This conclusion was reached after examination of cases from other states, as well as terms in Nebraska's marriage statutes supporting a common use definition of "marriage." Specifically, the opinion referred to the use of the terms "man and wife," and "bride and groom" as well as provisions voiding marriage when the parties are in the relationship of brother and sister, uncle and niece, and aunt and nephew. Id. The opinion concluded, "Where the Nebraska Legislature has not defined marriage to include a relationship between two persons of the same-sex, it should be given its usual and well-recognized meaning." Id. The opinion further concluded that a marriage license could not be issued to two persons of the same-sex due to the "inability of two persons of the same-sex to come within the definition of marriage." Id. Numerous other states with similar statutes have reached the same conclusion. See Singerv. Hara, 522 P.2d 1187, 1189 (Wash.App. 1974); Baker v. Nelson,191 N.W.2d 185 (Minn. 1971); Jones v. Hallahan, 501 S.W.2d 588
(Ky. 1973); Adams v. Howerton, 673 F.2d 1036 (9th Cir.), cert. denied, 458 U.S. 1111 (1982); Op. Att'y Gen. of Alaska 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 (March 31, 1995); Op. Att'y Gen. of Arkansas No. 95-062 (April 26, 1995); Op. Att'y Gen. of Maine No. 84-28 (Oct. 30, 1984); Op. Att'y Gen. of Kansas No. 77-248 (Aug. 4, 1977); Op. Att'y Gen. of South Carolina (Aug. 12, 1976).
Although the above-referenced Nebraska Attorney General's Opinion is nearly twenty years old, it remains valid. Current Nebraska law still requires that "at the time of marriage themale must be of the age of seventeen years or upward, and thefemale of the age of seventeen years or upward." Neb. Rev. Stat. § 42-101 (1993) (emphasis added). See also Neb. Rev. Stat. § 42-103
(voiding marriages between brother and sister, uncle and niece, and aunt and nephew); Neb. Rev. Stat. § 42-109 (requiring marriage ceremonies to include declaration by participants "that they take each other as husband and wife"). The introduction of legislation this year seeking to amend existing law so as to legalize same-sex marriages (LB 1260) also supports this view. Thus, same-sex marriages are not legally recognized in Nebraska.
B. Recognition of Marriages Contracted Outside Nebraska
Although Nebraska does not recognize same-sex marriages within the state, the question remains whether Nebraska must recognize same-sex marriages contracted in another state. Nebraska law provides that "all marriages contracted without thisstate, which would be valid by the laws of the country in whichthe same were contracted, shall be valid in all courts and placesin this state." Neb. Rev. Stat. § 42-117 (emphasis added).
Despite the use of the term "country" in this statute, it has historically been applied to marriages contracted in other states as well. See In re Binger's Estate, 158 Neb. 444, 448,63 N.W.2d 784 (1954) (applying same statute to Colorado common-law marriage); Scott v. Scott, 153 Neb. 906, 908, 46 N.W.2d 627
(1951) (applying same statute to South Dakota marriage); Allen v.Allen, 121 Neb. 635, 641, 237 N.W. 662 (1931) (applying same statute to a Colorado marriage); Staley v. State, 89 Neb. 701,702, 131 N.W. 1028 (1911) (applying statute to Iowa marriage;State v. Hand, 87 Neb. 189, 192, 126 N.W. 1002 (1910) (applying same statute to Iowa marriage); Bailey v. State, 36 Neb. 808,812, 55 N.W. 241 (1893) (applying statute to Iowa marriage);Gibson v. Gibson, 24 Neb. 394, 429, 39 N.W. 450 (1888) (applying same statute to marriage contracted in Illinois).
We would argue that Nebraska law implicitly prohibits recognition of same-sex marriages from other states, based on the commonly understood meaning of the word "marriages" and the use of gender specific terms in Nebraska statutes, as discussed above. Furthermore, the Nebraska Supreme Court has stated, "[E]very marriage statute is to be interpreted in harmony with the common law theretofore existing and as superseding it only to the extent required by its express terms or necessary operation."Christensen v. Christensen, 144 Neb. at 767. Clearly, same-sex marriages were not recognized at common law. See also Singer v.Hara, 522 P.2d 1187, 1192 (Wash.App. 1974) ("same-sex relationships are outside of the proper definition of marriage");Jones v. Hallahan, 501 S.W.2d 588, 589 (Ky. 1973) ("marriage has always been considered as the union of a man and a woman");Anonymous v. Anonymous, 67 Misc.2d 982, 325 N.Y.S.2d 499, 500
(1971) ("Marriage is and always has been a contract between a man and a woman."). See also Op. Att'y Gen. of Maine No. 84-28 ("it is a fundamental premise that marriage can occur only between persons of the opposite sex"); Op. Att'y Gen. of Kansas No. 77-248 ("The law makes no provision for a `marriage' between persons of the same sex. Marriage is and always has been a contract between a man and a woman. . . .").
Nonetheless, there is a very real possibility the Nebraska Supreme Court could hold otherwise. The terms of Neb. Stat. Rev. § 42-117 are broad and facially all-inclusive. Just as there is no specific provision excluding recognition of out-of-state incestuous or underage marriages (both of which are void if contracted in Nebraska), there is no provision excluding recognition of out-of-state same-sex marriages.
Significantly, an issue arguably similar to the one presented by your request has been addressed previously by the Nebraska Supreme Court. In State v. Hand, 87 Neb. 189 (1910), a man and a woman were charged with the crime of fornication. The court's opinion notes that they were prohibited from marrying under Nebraska law. The two had traveled to Iowa to celebrate their marriage "for the express purpose of evading the laws of the State of Nebraska." Id. at 189-190. After their marriage in Iowa, they returned to Nebraska. The court found that "by the laws of Iowa the marriage of defendants when consummated there was lawful in that state." Id. at 190. At issue was whether the marriage would be legally recognized in Nebraska. The court stated,
 In Van Voorhis v. Brintnall, 86 N.Y. 18, in the syllabus, the court say[s]: "The validity of a marriage contract is to be determined by the law of the state where it was entered into; if valid there it is to be recognized as such in the courts of this state, unless contrary to the prohibitions of natural law, or the express prohibitions of a statute. While every state can regulate the status of its own citizens, in the absence of express words, a legislative intent to contravene the jus gentium under which the question of the validity of a marriage contract is referred to the lex loci contractus cannot be inferred; the intent must find clear and unmistakable expression." The court cited Medway v. Needham, supra, and also quoted from Putnam v. Putnam, 8 Pick. (Mass.) 433, the following: "If it shall be found inconvenient, or repugnant to sound principle, it may be expected that the legislature will explicitly enact that marriages contracted within another state, which if entered into here would be void, shall have no force within this commonwealth." Acting on that idea, Massachusetts subsequently enacted a law as follows: "When persons resident in this state, in order to evade the preceding provisions and with an intention of returning to reside in this state, go into another state or country and there have their marriage solemnized, and afterward return and reside here, the marriage shall be deemed void in this state." (Gen. St. 1860, ch. 106, sec. 6.) After the passage of that law, the supreme court of Massachusetts in Commonwealth v. Lane, 113 Mass. 458, in an opinion by Mr. Chief Justice Gray, on page 464, say[s]: "A marriage which is prohibited here by statute, because contrary to the policy of our laws, is yet valid if celebrated elsewhere according to the laws of the place, even if the parties are citizens and resident of this commonwealth, and have gone abroad for the purpose of evading our laws, unless the legislature has clearly enacted that such marriages out of the state shall have no validity here. This has been repeatedly affirmed by well-considered decisions." And this seems to be the overwhelming weight of the better reasoned cases on the subject.
Id. at 191-192 (emphasis added). Thus, in the context of theHand case, the Nebraska Supreme Court stated that marriages which are void in Nebraska and which are contracted in another state purposely to evade Nebraska law and public policy are nonetheless valid in Nebraska unless the legislature expressly provides to the contrary. The Court further stated,
 We do not question the power of a state to pass a law similar to that passed by Massachusetts, as hereinbefore set out, but our legislature has not seen fit to do so. On the contrary, section 5316 Ann. St. 1907, provides: "All marriages contracted without this state, which would be valid by the laws of the country in which the same were contracted, shall be valid in all courts and places in this state." See Gibson v. Gibson, 24 Neb. 394, Bailey v. State, 36 Neb. 808; Hills v. State, 61 Neb. 589.
Id. at 192 (emphasis added). Thus, the Nebraska Supreme Court has specifically noted the broad language of the Nebraska statute, and stated that specific legislation would be necessary to carve out exceptions for marriages that are contrary to the policy expressed in Nebraska law. See also Staley v. State,89 Neb. at 702 (marriage of first cousins in Iowa must be recognized in Nebraska).
Consequently, it is possible the Nebraska Supreme Court could hold that Neb. Rev. Stat. § 42-117 requires Nebraska to recognize same-sex marriages contracted in Hawaii or other states if such marriages were legally valid in those states.
II. Whether Nebraska Would be Required to Honor a Same-Sex Marriage License From Another State if Legislation was Adopted Prohibiting Recognition of Such Marriages Either Before or After Such Marriages Were Legalized in the Other State.
As your question implies, the Nebraska Legislature could adopt legislation to specifically prohibit recognition of same-sex marriages, either before or after another state legalizes such marriages. The issue is whether such action by Nebraska would violate any provision of the United States Constitution, such as the Full Faith and Credit Clause or the Equal Protection Clause.
This precise issue was recently addressed by the Attorney General of Tennessee in Opinion No. 96-016 (February 13, 1996). The opinion examined the constitutionality of Tennessee Senate Bill 2305 which declares that same-sex marriages entered into in another state are void in Tennessee. That opinion states as follows:
 Article IV, Section 1 of the United States Constitution, the Full Faith and Credit Clause, states that "Full Faith and Credit shall be given in each State to the public acts, Records and judicial Proceedings of every other State." This provision, however, does not mean that every legal action taken in another state will override a conflicting Tennessee public policy and be recognized as legal in this state.
 Prima facie, every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the Full Faith and Credit Clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. It follows that not every statute of another state will override a conflicting statute of the forum by virtue of the Full Faith and Credit Clause. . . . Alaska Packers Ass'n v. Industrial Accident Commission of California, 294 U.S. 323, 547-48, 55 S.Ct. 518, 523 (1935). See also Sun Oil Co. v. Wortman, 486 U.S. 717, 722, 108 S.Ct. 2117, 2122, 100 L.Ed.2d 743 (1988) (Full Faith and Credit does not compel one state to substitute statutes of other states for its own statutes dealing with subject matter with which it is competent to legislate); Herman, The Fusion of Gay Rights and Feminism: Gender Identity and Marriage after Baehr v. Lewis, 56 Ohio State L. Rev. 985, 991 n. 25 (1995) (observing that in family law questions the United States Supreme Court seems to balance the forum state's public policy interests against the interests of comity).
. . .
 Section 1 of Senate Bill 2305 states: (a) It is hereby declared to be the public policy of this state to recognize the union only of a man and woman. No same sex marriage shall be recognized as entitled to the benefits of marriage. (b) Marriages between persons of the same sex are prohibited in this state. Any marriage entered into by persons of the same sex, where such license is issued by another state or foreign jurisdiction, shall be void in this state and any contractual rights granted by virtue of such license, including its termination, shall be unenforceable in the courts of this state.
 If enacted into law and if not unconstitutional on some other ground, Senate Bill 2305 would probably provide the expression of state public policy necessary to justify an exception to the Full Faith and Credit Clause so that this state would not be required to recognize the validity of a same-sex marriage obtained in another jurisdiction.
Id. (emphasis added). The Tennessee opinion also noted that Utah has already adopted a similar statute. See Utah Code Ann. § 30-1-4
(according to recent news reports, South Dakota has also adopted a similar statute).
The Tennessee opinion next examined the proposed statute under the Equal Protection Clause and noted that "no court has recognized a fundamental right under the federal constitution for persons of the same-sex to marry." Id. The opinion agreed with the Washington Court of Appeals which specifically held that refusal to recognize same-sex marriage did not violate that state's equal rights amendment since the failure to recognize same-sex marriages "is based upon the state's recognition that our society as a whole views marriage as the appropriate desirable forum for procreation and the rearing of children."Singer v. Hara, 522 P.2d at 1197. Along this same line, we note that the Singer court also stated,
 The institution of marriage is a union of man and woman, uniquely involving the procreation and rearing of children within a family, is as old as the book of Genesis. . . . This historic institution manifestly is more deeply founded than the asserted contemporary concept of marriage and societal interests for which petitioners contend. The due process clause of the Fourteenth Amendment is not a charter for restructuring it by judicial legislation. . . .
 The equal protection clause of the Fourteenth Amendment, like the due process clause, is not offended by the state's classification of persons authorized to marry.
Id. at 1197 (quoting Baker v. Nelson, 191 N.W.2d at 186).
We agree with the reasoning of the Tennessee opinion and the court decisions cited therein. We conclude Nebraska could validly enact legislation expressly refusing to recognize same-sex marriages before another state legalizes such marriages.See State v. Hand, 87 Neb. at 191-192 ("We do not question the power of a state to pass a law similar to that passed by Massachusetts [voiding marriages contracted in other states for the purpose of evading Massachusetts law]).
Similar arguments could be made to support the validity of legislation enacted after legalization of same-sex marriages in another state. However, after-the-fact adoption could make such a statute more difficult to defend since it would clearly be aimed at the law of a particular sister state. The State would also be in the position of expressing the public policy supporting such a law in a reactionary context. Furthermore, Nebraska would likely be faced with the practical problem of having at least some citizens with marriage licenses valid in another state which arguably would also be valid under Nebraska law. Although the Nebraska Supreme Court has noted the "state's vital interest in the institution of marriage . . . and the state's plenary power to fix the conditions under which the marital status may be created or terminated . . . .", Buchholz,197 Neb. at 183, retroactively invalidating same-sex marriage licenses, or refusing to extend similar benefits to similarly situated individuals could create additional legal arguments and litigation. See Williams et al. v. State of North Carolina,325 U.S. 226, 65 S.Ct. 1092, 112 (1945) (Black, J. dissenting).
Conclusion
Same-sex marriages are not recognized under Nebraska law. As to whether Nebraska must recognize same-sex marriages contracted in Hawaii or other states, we would argue that same-sex marriages are not "marriages" as that term is used in Neb. Rev. Stat. § 42-117 which provides that all "marriages" from foreign jurisdictions are valid in Nebraska. There is, however, a grave danger that under § 42-117, the Nebraska Supreme Court might well recognize same-sex marriages performed in Hawaii as being valid in Nebraska, even though this result is not required under the U.S. Constitution.
Secondly, we conclude Nebraska could validly enact legislation expressly refusing to recognize same-sex marriages, before another state legalizes such marriages. We believe such legislation could be defended against a constitutional challenge. As a leading case in this area of law stated, "The institution of marriage is a union of man and woman . . . [and] is as old as the book of Genesis. . . This historic institution manifestly is more deeply founded than the asserted contemporary concept of marriage and societal interests [contended by same-sex couples]. The due process clause [like the equal protection clause] . . . is not a charter for restructuring it by judicial legislation."Singer v. Hara, 522 P.2d at 1197 (quoting Baker v. Nelson,191 N.W.2d at 186).
The legislature may also be able to enact such legislation after legalization of same-sex marriages in another state. However, after-the-fact adoption could raise a number of additional legal problems, and would likely make defense of such a statute more difficult.
Accordingly, we strongly recommend that the Legislature act yet this session if it wishes to prevent same-sex couples "married" in another state from having that arrangement legally recognized in Nebraska.
Sincerely yours,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
Approved by:
Don Stenberg
Attorney General